STATE EX REL. CRAIN, Appellant, vs. ACKER, Respondent.

*March 15—April 5, 1910.*

*Elections: Ballots, when to be counted: Irregular marking: Intent:*
*Question for jury.*

1. A ballot marked in such a manner that the intent of the voter can be gleaned therefrom should be received and counted so as to effectuate that intent.

2. In *quo warranto* proceedings the question as to the intent of voters in marking their ballots in a certain irregular way is for the jury if, from the ballots themselves in connection with the extrinsic facts in regard to the situation, any reasonable mind might, by legitimate inference, ascertain such intent.

3. Subd. 3, sec. 57, Stats. (Laws of 1907, ch. 583), is of no assistance in determining the intent of a voter in placing a mark upon the ballot in the same space with the printed names of two candidates, but opposite a blank line left for individual nominations.

4. From a mark so placed no intent to vote for either of the two candidates whose names are printed can be inferred, especially where knowledge of the proper method of voting is shown by other portions of the ballot.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action in the nature of *quo warranto* between rival candidates for the office of county superintendent for Fond du Lac county at the election held April 6, 1909. After some amendment of pleadings the action was transformed into a recount of all ballots cast, whereby respondent was found to have a majority of sixteen of concededly valid ballots. There remained forty ballots of which the printed form and marking as to county superintendent were as follows:

| | Vote for one. |
|---|---|
| For County Superintendent of Schools. | RUBY M. ACKER, A Non-Partisan Superintendency............................................☐ |
| | EDWARD P. CRAIN, A Non-Partisan Superintendency..............................................☐ |
| | ........................................................☒ |

The relator claimed count of said ballots for himself. Each party moved for direction of a favorable verdict. Respondent's motion was granted and verdict directed in her favor, whereon judgment was rendered, from which the relator appeals.

For the appellant there was a brief by *D. F. Blewett* and *Duffy & McCrory,* and oral argument by *J. H. McCrory.*

For the respondent there was a brief by *Maurice McKenna* and *T. C. Downs,* and oral argument by *Mr. McKenna.*

DODGE, J.   The trial court was right in holding that the forty ballots above described were not necessarily to be disregarded or ignored merely because they were not marked in exact accordance with the directions of the statute.   The constitutional right of an elector to have any reasonable expression of his intention in voting given effect is of the most sacred character, and no intent to thwart it can be ascribed to the legislature except upon unambiguous expression.   While such purpose has been found in modern ballot legislation of some of the states, it is not declared in our statutes, and a ballot marked in such manner that the intention of the elector can be gleaned therefrom should be received and counted so as to effectuate that intent.   This purpose is manifest in the statute and has been declared by this court.   Subd. 3, sec. 57, Stats. (1898), as amended by sec. 7, ch. 583, Laws of 1907; *State ex rel. Blodgett v. Eagan,* 115 Wis. 417, 91 N. W. 984; *State ex rel. Dithmar v. Bunnell,* 131 Wis. 198, 110 N. W. 177.   The question, therefore, before the trial court was one of fact as to whether the several voters casting the questionable ballots intended to vote for the relator. That intent must be resolved from the ballot itself in connection with the extrinsic facts in regard to the situation so far as they throw any light upon the subject.   If from those ballots so considered any reasonable mind might by legiti-

mate inference, as distinguished from mere guess or conjecture, ascertain such intent, the court's duty was to submit it to the jury. Such, therefore, is the question to be considered here.

The appellant cannot derive aid from subd. 3, sec. 57, Stats. (1898), as amended by ch. 583, Laws of 1907, which provides:

"If an elector shall mark his ballot with a cross-mark . . . or any other marks . . . within the square after, at the right of the name of any candidate, or at any place within the space in which the name appears indicating an intent to vote for such person, it shall be deemed a sufficient vote for the candidate whose name it is opposite."

This statute was first framed at a time when each name of a nominated candidate was required to appear upon a ballot in a space by itself separated from others by both vertical and horizontal lines, and, except that it evinces a legislative purpose that the intent of the voter may be ascertained if possible and given effect, it is of no assistance in guiding the court as to the intent of a mark not opposite any name upon a ballot like this, where the names of both candidates are in the same space. If this ballot has any authority in the statutes, they are in confusion. The mark here is as much within the space where the respondent's name appears as the appellant's, and the statute by that clause would as much require counting the ballots for one as the other unless there can be some inference of the voter's intent as a question of fact.

We are presented by the respondent with a number of cases from other jurisdictions in which ballots more or less similar have been rejected, but nearly all of them upon the ground that the statutes declared such ballots void either because the marking did not comply with the absolute statutory requirements or because it constituted a distinguishing mark such as the particular statute made fatal to the validity of

the ballot. They therefore are not of aid to us. In *People ex rel. Bantel v. Morgan,* 20 App: Div. 48, 46 N. Y. Supp. 898, however, where the ballot was marked with much similarity to those under consideration, it was held quite impossible to determine any intent of the voter save by merest guess or conjecture. An exactly similar ballot was held to justify an inference of intent in an opinion by the trial judge in *Louck's Case,* 10 Lanc. Law Rev. (Pa.) 228, with no discussion whatever; and in *Middendorf's Case,* 4 Pa. Dist. Rep. 78, the trial judge in an opinion held that a mark out of place indicated an intention to vote for one of several candidates, and drew the inference that the intent was to vote for the one nearest the mark. A similar view was taken by Judge HASTINGS of the Fourteenth judicial circuit of this state in an opinion certainly as persuasive to our minds as either of those of the trial judges in Pennsylvania. This seems to be the extent of discoverable reported judicial opinion on the concrete question of fact, and it is not very conclusive.

It is argued that the electors who marked these ballots must be presumed to have intended to vote for one or the other of the two candidates and that it is a just inference they intended to vote for the nearest name. But is there any presumption or legitimate inference that they intended to vote for either? Each voter placed his mark upon a blank line where if he had written another name it would have indicated an intent to vote for such third person. Why is it not as probable that he made the mark for that purpose and by omission or confusion failed to write the name? Such intent is within the possibilities as pointed out in *People ex rel. Bantel v. Morgan, supra.* Again, it is not beyond possibility that some or all of these electors chose this method of declaring their disapproval of both names printed upon the ballot. Respondent urges the probability of ignorance in the electors as to the exact method of placing their marks.

But this conjecture is met, in case of twenty-eight of the ballots, by the fact that each of those electors upon the same document evidenced complete knowledge of the proper method of voting by his marking of a candidate for state superintendent of public instruction—a fact deemed persuasive in *People ex rel. Bantel v. Morgan.* In view of all these circumstances, we have reached the conclusion that the trial judge was correct in his view that any deduction as to the intent of any, certainly of the twenty-eight voters, could rest on no reasonable inference, but only on conjecture, and that therefore it was his duty to withhold the question from the jury under authority of cases like *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36; *Bakalars v. Continental C. Co.* 141 Wis. 43, 122 N. W. 721.

*By the Court.*—Judgment affirmed.