No. 34,693

H. M. HANSEN, *Appellant*, v. HARRY LINDLEY, *Appellee*.

(102 P. 2d 1058)

64

Opinion
filed June 8, 1940.

C. E. Birney, of Hill City, James E. Smith and E. H. Hatcher, both of Topeka, for the appellant.

Jerry E. Driscoll, Harold W. McCombs, both of Russell, W. L. Sayers and Casey Jones, both of Hill City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an election contest. Lindley was declared elected to the office of county clerk of Graham county by the board of canvassers. Hansen contested the election. The contest court found Hansen to have been elected. Lindley appealed to the district court. That court found Lindley to have been elected. Hansen has appealed to this court.

The statement of intention to contest the election charged that among the ballots mailed in illegal votes were received and legal votes rejected in four precincts, sufficient to change the result of the election.

The answer of Lindley first stated that the statement of intention

to contest failed to state sufficient facts to constitute grounds for a contest and that mistakes and errors were made by counting votes for Hansen that were cast for Lindley and by counting illegal ballots for Hansen and in failing to count legal ballots for Lindley.

The probate judge called two disinterested persons to sit with him as a contest court in compliance with G. S. 1935, 25-1413. This court proceeded to hear evidence on the issues and found for the contestor Hansen.

Lindley appealed to the district court pursuant to G. S. 1935, 60-3301.

When the contest reached the district court Lindley filed a demurrer to the statement of intention to contest on the ground that it did not set forth sufficient facts to entitle contestant to the relief sought and because it showed on its face that it was void under G. S. 1935, 25-1415. This demurrer was overruled. Thereupon the contestee filed a motion to strike certain allegations from the statement. When this motion came on to be heard Hansen stated that he desired to file an amended statement. He was given permission. Accordingly he filed an amended statement in which he set out errors and irregularities having occurred in four precincts in more detail than had been set out in the original statement. He also alleged errors of the board of canvassers in counting the ballots of voters who mailed their ballots to the county clerk, both from within and without the state. Before this amended statement was filed Lindley appealed to this court from the order of the trial court overruling his demurrer to Hansen's statement of intention to contest. This appeal was dismissed by this court without an opinion. Subsequently Lindley filed a motion in the trial court to strike certain allegations from the statement. This motion was overruled. Lindley then filed an answer to the amended statement of Hansen. This answer pleaded that about the same types of errors had been made in favor of Hansen and against Lindley as the statement alleged had been made in favor of Lindley and against Hansen. To this answer Hansen filed a reply in which he alleged that the answer of Lindley pleaded new matter as a ground of contest. Finally, on August 21, 1939, the issues were made up and the case came on to be heard in the district court. A little more attention than was absolutely necessary has been paid to the preliminary steps taken by the parties in framing the issues. The statutes providing for election contests do not contemplate that the technical rules with

reference to pleadings should be strictly followed. The idea is that the whole affair should be finally adjudicated as speedily as possible. Some reference is made in the briefs to *Campbell v. Ramsey,* 150 Kan. 368, 92 P. 2d 819. This was a contest which grew out of the same election as this case.

There is a distinction between this case and the case of *Campbell v. Ramsey,* supra. That case was tried upon the transcript of the evidence made before the contest court, including the exhibits. No other evidence was introduced before the district court. In view of that situation this court had the same opportunity to examine the record and reach a conclusion as to the facts that the trial court had. We examined the record and made our own findings of fact. In this case, however, the case was tried *de novo* in the district court. That court heard witnesses and examined exhibits and reached its own conclusion as to the facts. Under such a situation we are bound by the same rule that obtains in any case tried in a district court and appealed. We cannot weigh conflicting testimony. If there was substantial evidence to support a finding of fact, then it will not be disturbed by this court on appeal. There is another rule, however, to the effect that this court will examine written documents, and where the evidence on a particular point is uncontradicted will examine the record and may reach a different conclusion as to that fact than was reached by the trial court. In this case the ballots, and in the case of mailed-in ballots, the accompanying affidavits, were submitted to the trial court with no oral testimony in some cases and we have as good an opportunity to examine these ballots and affidavits and to reach a conclusion as to the facts as the trial court had. Neither party charges any fraud and neither party questions but what the ballots were in the same condition when they were produced in district court that they were in when they were counted at the polling places. In such a case the question to be decided is which candidate received the most legal votes. (See *Campbell v. Ramsey,* supra.)

The contest court gave Hansen a majority of three. The trial court found that Lindley had received 1,394 legal votes and Hansen 1,383, or a majority of eleven to Lindley. For the purpose of presentation to this court the ballots about which question is raised are divided into three groups. These are the ballots cast outside the state and mailed in to the county clerk, as provided in G. S. 1935, 25-1101 to 25-1113; those cast by voters within the state but

absent from their precinct on election day and mailed in, as provided by G. S. 1935, 25-1001 to 25-1008; and ballots cast at the various precincts but which are claimed by Hansen to be void under some provision of G. S. 1935, 25-416, or G. S. 1935, 25-419. Most of these were ballots that were counted for Lindley and which Hansen argues here were void and should not have been counted. There were four ballots, however, which Hansen argues should have been counted for him but which the trial court held to be void ballots and refused to count.

The first ballots we shall consider are those of Al and Sallie Richmeier, husband and wife, Joseph P. Richmeier and Sylvester Richmeier, his son, and Dorothy Lee Gillette and Blanche Gillette, her mother. These ballots were cast by the above-named persons who were absent from the state on election day. Such people are allowed to vote by the terms of G. S. 1935, 25-1101 to 25-1113. The first provision of G. S. 1935, 25-1101, reads as follows:

"It shall be lawful for any qualified elector of this state, who is to be absent from the state upon the day of any primary or general election and who is actually so absent during all of the time that polls are open on such day, to vote for county, district and state officers. . . ."

The succeeding sections then set out the procedure to be followed.

The objection of Hansen to the group of ballots we are now considering is that the persons who cast them were not actually residents of the state, hence could not be qualified electors of the state. The qualifications for electors are fixed by article 5 of the state constitution. Section 1 provides as follows: .

"Every citizen of the United States of the age of twenty-one years and upwards—who shall have resided in Kansas six months next preceding any election, and in the township or ward in which he or she offers to vote, at least thirty days next preceding such election—shall be deemed a qualified elector."

It will be noted that the question of whether one is a qualified elector turns, among other things, on a question of residence. The question of residence is about as difficult a fact question as the courts have to consider. The books are full of cases where some voter has been gone from some place, usually an old home, and has insisted that his residence for voting purposes was still at the old home precinct. We are not without help in this situation, however. G. S. 1935, 25-407, provides as follows:

"The judges of election, in determining the residence of a person offering to vote, shall be governed by the following rules, so far as they may be applicable:

"*First.* That the place shall be considered and held to be the residence of a

person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.

"*Second.* A person shall not be considered or held to have lost his residence who shall leave his home and go into another state or territory, or county of this state, for temporary purposes merely, with an intention of returning.

"*Third.* A person shall not be considered or held to have gained a residence in any county of this state, into which he shall have come for temporary purposes merely, without the intention of making said county his home, but with the intention of leaving the same when he shall have accomplished the business that brought him into it.

"*Fourth.* If a person remove to any other state, or to any of the territories, with the intention of making it his permanent residence, he shall be considered and held to have lost his residence in this state.

"*Fifth.* The place where a married man's family resides shall be considered and held to be his residence.

"*Sixth.* If a person shall go into another state or territory, and while there exercise the right of suffrage, he shall be considered and held to have lost his residence in this state."

The above section refers to the judges of election when a vote is challenged and was intended as a guide to them. There is no reason why the above section should not be a guide to the contest court, and on appeal to the district court and to this court. After all these provisions are examined, it becomes clear that the question of whether a particular person is a resident so as to make him a qualified elector is one of fact. It was so treated in this case. As has been pointed out heretofore, the trial court heard evidence on this question as to each of the ballots about which this argument is made. The court found in effect that the persons who cast these ballots were residents of the precincts of which they claimed to be residents. We have examined the record, including the transcript, and have concluded that the above finding of fact was proved by substantial, competent evidence in regard to each ballot about which the question is raised.

The next ballots we shall consider are those of Richard Briscoe and Nell Briscoe. They are not out-of-state ballots. Richard and Nell Briscoe offered themselves and tendered their ballots at the polling place in Hill City. Their votes were challenged on the ground of nonresidence. The challenge was sustained. The election board determined that they were not residents as did the trial court and did not count their ballots. Hansen argues that the trial court erred in this respect and that the ballots should have been

counted. The ballots show that the voter in each case voted for Hansen. Lindley argues here that the failure of the election officials to comply with G. S. 1935, 25-408, is a bar to the matter of the rejection of these two ballots being considered in a contest of the election. He also argues that the statement of intention to contest did not comply with the provisions of G. S. 1935, 25-1416, in that it did not state that Richard and Nell Briscoe ever appeared and offered to vote, and hence the failure to count these two ballots cannot be considered by us. On account of the conclusion we have reached as to the finding of the trial court on the question of residence, it is not necessary for us to deal with those two questions. On the question of whether the trial court erred in finding that these two people were not qualified electors on account of nonresidence, the same rule governs as has been heretofore stated with reference to the electors who mailed their ballots in. The finding was sustained by substantial, competent evidence and may not be disturbed on appeal.

We shall now pass to the consideration of another group of ballots. This is a group of ballots mailed from out the state, each of which was voted for Lindley and about each of which Hansen argues there was such irregularity that it should not have been counted. Before proceeding with the discussion of these ballots we shall examine the pertinent statutes. The subject is covered by G. S. 1935, 25-1101 to 25-1113. These sections provide for the preparation of ballots with a stub attached containing a number which shall be the same number as the ballot. The section then provides that this stub shall contain a form of affidavit so that the voter may state clearly under oath his place of residence, including the election precinct and whether or not he has been duly registered, his post-office address at the time of election, and that he personally has marked the ballot to which the stub was attached and personally removed the stub after marking the ballot and that no other person placed any mark upon the ballot. The act then provides that between thirty days and two days before any primary or general election any persons qualified to take advantage of the act may file with the county clerk an affidavit in duplicate executed before any officer qualified to administer oaths for general purposes. In this affidavit he shall state the precinct in which he is an elector, his correct post-office address, and that he is necessarily absent from the state or will be absent from the state on election day. The stat-

ute then makes it the duty of the county clerk upon receiving such an affidavit to determine whether or not the person named therein is a duly qualified elector of his county and to make a record of it and send the copy of the affidavit to the secretary of state. The statute then provides that the county clerk shall transmit to each person who has made such an affidavit whom he finds to be a duly qualified elector one county ballot with the stub attached, as has been described, and with printed instructions and an identification envelope bearing on the outside of it the same number as the ballot and stub. The statute then provides that any person having the qualifications may upon receiving the ballot, as described, cast his vote by making a cross mark with ink or black lead pencil in the squares opposite the names of the candidates for whom he desires to vote; that he shall then fill out in full the affidavit upon the stub, and sign it before any officer authorized by the laws of the state of Kansas or of the United States to administer oaths and swear to it in the presence of the officer who shall attach to it his certificate; that the voter shall then remove the stub from the ballot and place it in the identification envelope bearing the same number as the ballot and stub and seal this envelope and enclose it in an envelope or package duly sealed and addressed to the county clerk; that such ballot shall be marked and mailed on election day and shall reach the county clerk on or before the tenth day following the election.

It will be noted that these statutes provide for two affidavits, one upon which the ballot is given or sent to the elector, and the other to be signed when the ballot is marked and mailed in on election day.

The first ballot we shall consider under this head is that of Ernest Sandlin. This is exhibit No. 21. Both the affidavits and the ballot are furnished us. There was no oral testimony. The ballot was voted for Lindley. Hansen points out an irregularity in the affidavit filed with the county clerk upon the authority of which the county clerk issued the ballot. The irregularity is that the affiant did not sign on the line provided, but instead, by mistake, signed on the line provided for the signature of the notary. The notary then signed his name just underneath the name of the voter and affixed his seal. This affidavit is required so that the county clerk may consider the information furnished and determine whether or not the affiant is entitled to a ballot. All this information is furnished in this affidavit and it is clear that the voter treated the document as

though it were an affidavit. The trial court was correct in counting this ballot.

The next ballot we shall consider is that of Vernon Higer, No. 15. This ballot was cast for Lindley and the trial court counted it for him. Hansen argues that on account of irregularities in the affidavit made on election day that this ballot should not have been counted. The irregularity is that when the notary took the acknowledgment, put his seal on it, and completed his certificate he at first stated "My commission expires February 17, 1938," then someone scratched out the figures "38" and wrote over them the figures "40." This appears to be a correction of a clerical error. In the absence of proof to the contrary such should be the presumption. The trial court did not err in counting this ballot.

The next ballot we shall consider is that of Isador Rohr, No. 13. This was mailed in from Minnesota. It was cast for Lindley and counted for him by the trial court. Hansen argues here that it should not be counted because of certain irregularities in the affidavit upon which the ballot was sent to Isador Rohr. The irregularity is that the venue of the affidavit is laid in Graham county, Kansas, while it is sworn to before a notary at Park Rapids, Minn. The notary in Minnesota would not have any authority to administer an oath or to take an acknowledgment in Kansas. Clearly what happened was that someone filled out the blank spaces in the affidavit and wrote in "State of Kansas, Graham county," inadvertently. The purpose of the affidavit is to enable the county clerk to determine whether the affiant is entitled to a ballot. The affidavit in this case was sufficient in that respect. The trial court did not err in counting this ballot. (See *Teutonia Loan and Building Company v. Turrell*, 19 Ind. App. 469.)

The next ballot we shall consider is that of Katheryn Stewart, No. 53. This vote was cast in the state of Michigan and was voted for Lindley. Hansen argues here that it should not be counted because the affidavit filed with the county clerk, upon which the ballot was sent to her, does not state that she is a legal elector of any precinct or township. This affidavit does contain the statement that Katheryn Stewart is a resident on a specified street in Hill City. This information was sufficient so that the county clerk was able to ascertain whether she was entitled to a ballot. The trial court did not err in counting that ballot.

The next one we shall consider is that of Ethel Spencer, No. 47.

This vote was cast in Colorado and was counted for Lindley. Mr. Hansen argues that it should not have been counted because it appears that the affidavit of the voter, upon which the ballot was issued to her, shows that the venue was laid in Graham county, Kansas, while it was sworn to before a notary public of Adams county, Colorado. What has been said with reference to ballot No. 13 applies with equal force to this ballot. The trial court did not err in counting it.

This completes the discussion of the ballots that were voted outside of the state, mailed in to the county clerk and counted for Lindley.

The next group discussed by Hansen is that of ballots that were cast within the state, but by voters absent from Graham county. Before we proceed to a discussion of this we must notice the statute that gives people within the state, but absent from their county, the right to vote. The subject is covered by G. S. 1935, 25-1001 to 25-1008. It provides that any qualified elector who is unavoidably absent from his township or ward because his business requires him to be elsewhere outside of the county in which he resides may vote for county officers, or others, in any voting precinct where he may present himself for that purpose. The act then provides that the voter so entitled shall present himself at the polls in any precinct where he may be on such election day and make an affidavit as follows:

"STATE OF KANSAS, ............................ COUNTY, ss.

"I, ........................ ............................, do solemnly swear that I have resided in the state of Kansas more than six months, and in the township of ........................ (or in the ........................ ward of the city of ........................), in the county of ........................, in said state, more than thirty days next preceding this date, and am in all respects a duly qualified elector of said........................; that I am a ........................, and that because of my duties (or occupation or business) as such ........................ I am required to be absent from my township (or ward) on this day, and have had or will have no opportunity to vote there; and that I have not voted elsewhere at this election." (G. S. 1935, 25-1002.)

Any judge of election is authorized to administer the oath and make the affidavit. He is then given a blank official ballot which he must mark the same as any resident voter and must fold it and hand it to the judges, but the ballot is not deposited in the ballot box nor entered on the poll books, but is put in an envelope upon which on the back thereof one of the judges must write "The ballot of ...................., an absent voter of .................... township (or ward, or

precinct of the ............. ward, of the city of ....................), in the county of ...................," which one of the judges must sign. All such envelopes must be filed with the county clerk of the county where such vote was cast not later than the day following such general election, and the county clerk shall immediately mail them to the county clerks of the respective counties where such votes belong. The statute then provides for the canvass of the ballots and for penalties for swearing falsely.

The first vote we shall consider under that head is that of Edna Swank. That ballot is designated as PA in the record. This ballot was cast for Lindley, and Hansen argues here that the vote should not be counted because the affidavit she made in Logan county did not state that she was an elector of any precinct. This affidavit is before us and it appears that she did say she was an elector of Graham county. A careful examination of the affidavit form in the statute, which has been heretofore set out, shows that the voter must swear that he was a resident of the state of Kansas more than six months and in a certain township or in a certain ward or precinct of a certain ward or in the city and county more than thirty days next preceding the election day. The affidavit form then provides that he shall state he is a duly qualified elector (the statute does not state that she shall state she is a duly qualified elector of some precinct, but does say she shall give her residence as to township or ward and state that she is an elector of ....................). Hansen argues that where the last blank appears she should have written in her precinct as well as Graham county, but we hold that the statute is not clear enough that this should be done so that we could say the ballot was invalid because she did not do that. She did say she was a resident of Wildhorse township in the first part of the affidavit. This ballot was properly counted for Lindley.

The next ballot we shall discuss under this head is that of Ed Ashcroft, which is designated as PE in the record. This ballot was cast for Lindley, and Hansen says it should not be counted because the affidavit which he made when he voted does not give his reasons for being absent from his precinct. The trouble about that argument is that the affidavit is before us and it shows that he said he was a worker at Fort Riley and because of his duties as such worker he was required to be absent from his city. That seems to us a sufficient reason. Hansen also argues that the vote should not be counted because the affidavit shows he was absent from his city and

he should have said he was absent from his township or ward. If he was absent from Hill City he certainly was absent from any township or ward in Hill City, and the court was correct in counting the ballot for Lindley.

The next ballot which we shall consider is that of Vivian Inlow, No. 4. This ballot was cast for Lindley, and Hansen says it should not have been counted because she said in her affidavit she was a duly qualified elector of the city (that would be the city of Hill City) and did not give any ward or precinct of which she was a voter. The difference between this ballot and that of Edna Swank is that Edna Swank said she was a resident of Wildhorse township in the county of Graham before she stated of what place she was a voter. In the affidavit of Vivian Inlow she does not say she resides in any township or ward or city but that she is a resident of Hill City, which contains two precincts. On this account it cannot be held that the fact that the affidavit form does not provide in the blank space for her to state of what city, township or ward she is an elector meets the situation. Hence this vote should not be counted.

The next ballot we shall discuss under this head is that of Dale U. Loyd, No. 11. This ballot was cast for Lindley, and Hansen argues that it should not have been counted at all because it appears that it was sworn to before a judge of election in a ward called absentee ward at Lawrence, Kan. The statute says that the voter shall appear before the judge in any precinct, and the judge of election of any precinct in the state may administer the oath. It does not appear from this record that there was not an absentee ward in Lawrence to which all absentee voters were sent on election day. In the absence of such a showing we will presume that the person before whom this affidavit was made was a judge of a regular election board.

The next ballot we shall consider under this group is that of LeRoy VanDuvall, designated in the record as PD. We shall consider that in connection with that of Grace VanDuvall, designated in the record as PL. (She appears to be the wife of LeRoy Van-Duvall.) These two votes were cast and counted for Lindley. Hansen argues that these ballots should not be counted because they both stated that they were residents of Delaware township in Lansing precinct in the county of Graham and were duly qualified electors of Graham county. What happened here is that when they filled out their affidavits, apparently they were confused about resi-

dence and thought when they were asked to give their residence they should tell where they were actually living and they thought they should write something about Graham county, so they said they were residents of Delaware township in Lansing precinct in the county of Graham, then went ahead and stated they were electors of Graham county. Further on in the affidavit they said they were required to be absent from Nicodemus township, which we all know is the precinct in Graham county. Lindley apparently did not make any effort to show that these two people were residents of Graham county or that they had any right to vote in Graham county. If the statements in the affidavits are to be given any weight at all we must say that neither one of these people had a right to vote in Graham county and these two votes should not be counted.

The next ballot we shall consider in this group is that of Paul Wuchter, designated as No. D or DB. This ballot was cast for Hansen, but was not counted for him because in his affidavit he did not give any reason why he was absent from his township and for the further reason that he did not write the full name of Hansen on the ballot but wrote it "Hanson." Hansen argues here that this ballot should have been counted. The argument is good. The statute giving the electors absent from the county, but in the state, the right to vote provides they shall have this right if unavoidably absent from their township or ward because their duties or occupation or business require them to be absent. The affidavit form provides for this information to be given. Wuchter took the stand in the trial court and testified. The trial court heard this testimony and found in effect that there had been substantial compliance with the statute. The ballot should have been counted.

The next ballots we shall consider are those of Seraphine Brungardt, Gwendolyn Richmeier, Martin Boxler and Mike Rome, Nos. Ce 74, Ce 75, Ce 76 and PC. These ballots were all sent in from Garden City, but none of them had the affidavit that has been referred to so many times in discussing this subject. The trial court permitted the electors in each case to take the stand and testify that they had made an affidavit and handed it to the judge of the election. If their story is correct it would appear that the judges of the election board neglected to send the affidavits in with the ballot, as is provided by the statute, which says that the affidavit shall be sent with the ballot. After the court had heard the evidence, as stated above, it counted these four ballots. They were all cast for

Lindley. Hansen claims that this was error and that the ballots should not have been counted. Lindley argues that this case falls within the rule announced in the case of *Campbell v. Ramsey*, 150 Kan. 368, 92 P. 2d 819, with reference to the voters who were helped mark their ballots when they did not have any physical defect. This court held that failure of the election board to do its duty and hand these illiterate people ballots and let them spoil them if they wanted to or take their chance marking them correctly did not have the effect of making these ballots void. This court said:

"They [the voters] cannot be disfranchised altogether because the election board neglected to do its duty. . . . It is true that the section first quoted above [G. S. 1935, 25-416] requires the voter to 'retire alone' to the voting booth. Here again we have a failure of the election board to do its duty." (p. 385.)

We have concluded that this case comes within that rule. (See, also, *Bullington v. Grabow*, 88 Colo. 561.)

The next question we shall consider has to do with a group of ballots which were cast for Lindley at the polling places in Graham county, but which Hansen argues should not have been counted for various reasons, which will be noted as each ballot is discussed. These ballots are before us and there was no oral testimony offered with reference to them. There is no argument made but what these ballots are in the same condition they were in when counted by the election board. No question is raised as to fraud.

The first one we shall consider is exhibit C 1. Hansen argues that it should not be counted because it is clear that the voter first put an X mark in the square opposite the name of the democratic candidate for county attorney, then erased that mark and put one in the square opposite the name of the Republican candidate. Hansen argues that this is a means of identification. It is clear that this is an erasure. The assumption is that it is an erasure made by the voter. The subject is covered in part by G. S. 1935, 25-419 and 25-416. Section 25-419 provides, in part, as follows:

"Any ballot upon which there shall be found a cross mark outside any voting square, or upon which there shall be found any other mark than the cross mark used for the purpose of voting, or upon which the names have been written otherwise than as heretofore provided, or any ballot which has been defaced or torn by the voter, or from which there shall have been erased any figures, letter or word, or any ballot which shall have been marked by or written upon with other than a pencil, shall be wholly void, and no vote thereon shall be counted. Whenever a cross X mark shall be made in the square at the right of the name of 'more than one . . .'"

G. S. 1935, 25-416, provides, in part, as follows:

"It shall not be lawful . . . to erase any printed figure, letter or word therefrom . . . or for any person other than the voter to erase any mark or name written thereon by the voter."

The language upon which Hansen relies is "or from which there shall have been erased any figures, letter or word." We have heretofore construed G. S. 1935, 25-419 and 25-416, together and held these provisions to mean anything printed on the ballot rather than any mark the voter had made on the ballot. (See *Boddington v. Schaible,* 134 Kan. 696, 8 P. 2d 314.) Following the rule laid down in that case we have concluded that ballot C 1 was valid and should have been counted.

The next ballot we shall consider is C 3. Hansen argues that this ballot should not be counted because the voter wrote in the name of Paul Turner for township treasurer and put an X mark in the square and also wrote the name of Paul Turner as a candidate for constable and put an X mark in the space provided. This appears to be an honest effort on the part of the voter to vote for the same man for two different offices. This is not forbidden by any statute and was not done to identify the ballot. The ballot should have been counted.

The next ballot we shall consider is C 4. Hansen argues here that this ballot should not have been counted because in making the X mark in the square opposite the name of one of the candidates for probate judge the voter extended the pencil mark through the lower right-hand corner of the square for about half an inch. This mark could have been intended for a means of identifying the ballot, but it seems to us the more reasonable view is that it was made by a slip of the voter when attempting to make the cross. An examination of the mark with a magnifying glass indicates that the mark is a continuation of the downward stroke of the cross mark. Conclusion No. 10 of the commissioner in *Wall v. Pierpont,* 119 Kan. 420, 240 Pac. 251, is as follows:

" 'Stray lines, lines made by a slip of the voter when attempting to make the cross, and other accidental lines, do not invalidate the ballot.' " (p. 443.)

The ballot should be counted.

The next ballot we shall consider is C 50. Hansen argues that this ballot should not be counted because of two ink spots which appear along the right-hand margin of the ballot. The crease in the ballot and the relative position of the two spots show clearly

that a drop of ink fell on the ballot, and when it was folded the ink blotted the paper pressed against it, thus making two spots. There was evidence that the election officials used pen and ink when counting. While these spots could have been used as a means of identification, a much more reasonable explanation is that one of the judges spilled a drop of ink and it was blotted.

The next ballot we shall consider is C 51. Hansen argues that this ballot should not be counted because the voter marked the cross in the square opposite the name of Hansen and then erased that cross mark, not very neatly, to be sure, and made a cross mark in the square opposite the name of Lindley. What has been said already with reference to C 1 applies with equal force to this ballot. The court was correct in counting it.

The next ballot we shall consider is C 52. Hansen argues that this ballot should not be counted because down in the lower right-hand corner are two brown spots. It is difficult to tell whether they are defects or imperfections in the paper or are the result of the paper being scorched. At any rate, they are too minute to constitute a reason for holding the ballot invalid, since there is no evidence that they were put there by the voter. The trial court was correct in counting it.

The next is C 53. Hansen argues that this ballot should not be counted because in the square opposite the name of the only candidate for probate judge on the ticket the cross mark extends about a quarter of an inch outside the upper right-hand corner of the square. The same rule applies to this ballot as we have stated should apply to C 4. The mark appears to be the result of an inadvertent slip by the voter. G. S. 1935, 25-420, provides as follows:

"No ballot shall be invalidated and thus thrown out because a cross within the square is not made with mathematical precision. The intent of the voter must be first considered, and if in the opinion of the judges the cross is not an identifying mark the ballot shall be counted."

This mark is not an identifying mark, and the ballot should be counted.

We shall now consider a group which consists of ballots C 74, also marked P 42, C 75, C 77 and C 78. These are ballots which were cast for Lindley by persons who were given aid in marking them because they requested it even though they were not entitled to it on account of some physical disability, as provided in G. S. 1935, 25-416. The record is not clear about just what happened in these

cases and is not clear that the particular ballots in question were cast by people who were not entitled to help. However, the entire question is settled by what we said in *Campbell v. Ramsey*, supra, a quotation from which has already been set out in this opinion. The trial court was right in counting the ballots.

The above group of ballots were considered at this point in the opinion because it is treated at that place in the brief of appellant. We shall return to a consideration of the alleged defective ballots.

The next one is C 80. Hansen argues that this ballot should not be counted because it shows erasures and smudges. The voter wrote in the name of George Nickelson in the blank space provided for candidates for township trustee and put a cross in the square opposite his name. Then he wrote in the name of Everett Kohart in the blank space provided as a candidate for township treasurer. Where the complaint about erasure comes in is that each one of these names appears to have been written over a place where another name had been erased. There is just enough of the erased name visible in each case so that it appears that what happened was that the voter wrote the name of Everett Kohart in as a candidate for township trustee and that of George Nickelson as a candidate for township treasurer and realized after he had done this that he wanted it the other way around and erased the names and wrote them in the way he wanted them. At any rate, what has already been said in a consideration of C 1 is a sufficient answer to Hansen's argument on this point. The court was right in counting this ballot.

The next one is C 81. On this ballot the voter evidently made a cross mark in the square opposite the name of Hansen, then erased his mark in the square opposite the name of Lindley. This mark is peculiar in that the mark from the upper left-hand corner to the lower right-hand corner is heavy and black, while the other mark of the cross is so faint and light it can hardly be seen. The same thing seems to have happened in the case of the two candidates for county treasurer. At first glance this would seem to come under the same head as C 1 and C 80, but the trouble is, when the voter erased the cross mark he had made after the name of Hansen he tore the ballot. The tear is about half an inch one way and an inch the other. G. S. 1935, 25-419, provides, in part, "any ballot which has been defaced or torn by the voter . . . shall be wholly void and no vote thereon shall be counted." There can be no doubt that this ballot was torn by the voter. Either the language quoted means

what it says or it does not. There is very little for a court to say as to such a question. The ballot should not have been counted.

The next one we shall consider is C 99. Hansen argues that this ballot should not be counted because the voter made just half a cross mark after the name of one of the candidates for superintendent of public instruction. If this were the whole picture he would be right, but an examination of the ballot shows that the voter made half of the cross mark after the name of one of the candidates, then erased that half line and made a good cross mark after the name of the other candidate. The court was correct in counting this ballot.

The next ballot we shall consider is C 45. Hansen argues that this ballot should not be counted because of what he refers to as a red mark on the back of it. There is a mark of some kind on the ballot, all right, about in the middle of it and a third of the way from the top. It is right on the crease where the ballot was folded. There is no evidence that this was put on as an identifying mark. The ballot should be counted.

The next ballot we shall consider is C 54. Hansen argues here that it should not be counted because the voter wrote in the name of Delbert Worcester just below the blank space provided for candidates for township treasurer and put a cross mark in what he evidently thought the proper square. Then he wrote the same name in the blank space provided for candidates for township treasurer and put a cross mark in the proper square. What happened, evidently, was that this voter wanted to vote for Delbert Worcester for township treasurer, but he wrote the name just above the title of the office where it appeared on the ballot and put a cross mark in the square that follows the blank space that was provided. We say this is what happened because the name is not written in the line provided, but just below it, and for the further reason that he had already voted for one candidate for township trustee and if this name should be considered a vote for township trustee then he voted for two men for the same office, one whose name was printed on the ballot and one whose name he wrote in. Then, after he discovered his mistake, as he must have done, he wrote the name in the proper place as a candidate for township treasurer, for which office there was the name of no candidate printed on the ballot. This is clearly not an attempt to identify this ballot and it should be counted.

The next ballot we shall consider is C 97. Hansen argues that

this ballot should not be counted. It has a triangular piece torn off a corner about an inch in length along the hypothenuse of the triangle. G. S. 1935, 25-419, provides in part:

"Any ballot which has been . . . torn by the voter . . . shall be wholly void, and no vote thereon shall be counted."

The trouble with this argument is that there is no testimony that this tear was by the voter. We cannot indulge any such presumption. The court was correct in counting this ballot.

This completes the discussion of the ballots voted in Graham county for Lindley and which Hansen says should not be counted for the reasons urged. There remains a group of ballots which were voted for Hansen and which the trial court did not count.

The first one is Ce 45. The trial court did not count this ballot because there was a cross mark in the square opposite the blank space under heading "Township Treasurer." All the cross marks on this ballot are small and light, but there is such a mark in this particular square after the blank space. Hansen argues that there has been an attempt to erase this mark, but an examination under the microscope does not disclose any attempt to erase it. This ballot should not be counted. (See Conclusion of Law No. 1 in the report of the commissioner in *Wall v. Pierpont,* supra.)

The next one we shall consider is Ce 59. The trial court did not count this ballot because there is a cross mark about a half inch to the right and a half inch above the square opposite the name of the candidate for judge of the district court. All the rest of the cross marks on this particular ballot are in the proper squares. It is clear that the voter intended to vote for the only candidate for judge of the district court. Here is the statute, however:

"Any ballot upon which there shall be found a cross mark outside any voting square . . . shall be wholly void and no vote thereon shall be counted." (G. S. 1935, 25-419.)

The ballot should not be counted.

The next ballot we shall consider is Ce 64. This ballot was not counted because there is a cross mark in the square opposite the blank line under the heading "County Treasurer." What has been said with reference to Ce 45 applies with equal force here. The ballot should not be counted.

· The next one is L 26. This ballot was not counted because on the blank line provided under the heading "Justices of the Peace" the voter had placed the letters "T. W." Hansen advises us that

the voter undoubtedly intended to vote for Tim Wagner, who was a candidate for and was elected justice of the peace at this election, and placed his initials on the ballot instead of writing in the full name. The statute makes provision for writing in the names of candidates, but makes no provision for voting for them by placing only their initials on the ballot. Naturally this must be the rule. These initials were nothing more than a mark. The ballot was void and the trial court was right in not counting it.

It will be seen that the trial court erred in its ruling as to five ballots. Since the judgment was that Lindley was elected by a majority of eleven these errors are not sufficient to require a reversal of the judgment.

The judgment of the trial court is affirmed.

DAWSON, C. J., not sitting.