# STUART A. MURRAY v. RICHARD C. FLOYD.[1]

November 12, 1943.

No. 33,512.

[1]Reported in 11 N. W. (2d) 780.

*Stone, Manthey & Carey,* for appellant.
*Ben P. Constantine* and *Fred A. Cina,* for respondent.

PETERSON, JUSTICE.

This is an election contest to determine whether contestant, Murray, or contestee, Floyd, was elected county commissioner of the sixth district in St. Louis county at the general election held on November 3, 1942. Contestant, contestee, and others were candidates for nomination in the primary. Contestee and one Indihar were nominated. Although contestant was defeated in the primary, he became a so-called "sticker" candidate at the election. A volunteer committee, organized to espouse his candidacy, caused different kinds of stickers to be printed and placed in the hands of voters for use at the election. Some had printed on them contestant's name with the words "County Commissioner, Sixth District" and a square space for marking the ballot. Others simply bore his name. Of the votes for contestant, approximately equal numbers were cast by the use of stickers and by writing his name in the blank space for the purpose on the ballots.

The court below found that 4,864 votes were cast for contestee and 4,812 for contestant and dismissed the action. Contestant appeals. On the appeal he challenges 93 ballots. He claims that some of these were erroneously not counted for him and that the others were erroneously counted for contestee.

■ Most of the challenged ballots bear such marks as two cross marks for a candidate, erasures, retracings, heavy cross-mark lines, crosses with a light line made by the voter in bringing the pencil up to commence a cross line, lines underscoring the name of contestant, single lines made in the space for marking the ballot opposite the name of the candidate as if the voter started to make a cross and then changed his mind, an indecent drawing on the face of a ballot, and cross marks and numbers on the back of ballots. The question is whether such marks are distinguishing marks requiring rejection of the ballots.

We have so recently stated the applicable rules in cases like Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381; Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749; and Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611, that we do not deem it necessary to do more than indicate what they are. In the cited cases we held that superfluous cross marks on the face of a ballot and cross marks and numbers on the back thereof are distinguishing marks requiring rejection of the ballot, and that erasures, obliterations of cross marks, retracings, heavy cross-mark lines, flourishes and other lines incidental to making cross marks, a line made in the square opposite a candidate's name as if the voter, who used complete cross marks for voting, started to make a cross mark which he did not complete, and indecent words written on a ballot are not distinguishing marks. See Greene v. Bjorseth, 350 Ill. 469, 183 N. E. 464. We have carefully examined the challenged ballots and find, with the exceptions to be presently mentioned, that the trial judge correctly applied the rules in determining the validity of all such ballots. Apparently through oversight, one ballot (exhibit M-20) was not counted for contestant. Three ballots (exhibits F-28, F-35, and F-58), which were counted for contestee, should not have been counted for him. On one ballot contestant's name was underscored with two heavy lines. It was properly rejected. Superfluous lines which serve to identify a ballot are distinguishing marks requiring its rejection.

The rule that superfluous cross marks made upon the ballot by

the voter are distinguishing marks, vitiating the ballot, applies to ballots where the voter uses a sticker the same as in other cases. Our statute does not expressly authorize voting by stickers. Minn. St. 1941, § 206.16(3), provides that a voter may write in the names of persons, other than the regular nominees, for whom he desires to vote, in the blank spaces under the printed names of the candidates, and that, where a name is so written, it shall be counted as balloted for the person whose name is written, whether marked in the square or not. By judicial construction, the use of a sticker is held to be the same as writing in a name. Adams v. McMullen, 184 Minn. 602, 239 N. W. 594; Snortum v. Homme, 106 Minn. 464, 119 N. W. 59. Since the use of a sticker stands upon the same basis as writing in a name, the statute leaves it optional with the voter to use a cross mark also, but it does not permit him after registering his intention with a cross mark to add additional cross marks and thus identify his ballot. Some point is made that voters were misled by the various types of stickers used at the election. We find no merit in the point.

An erasure or obliteration is not a distinguishing mark which voids the ballot for the simple reason that the statute, Minn. St. 1941, § 206.50(8), authorizes erasures and directs that ballots having erasures shall be counted for the person for whom they were evidently intended. By judicial construction, an obliteration is held to be the equivalent of an erasure. Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611. To reject such ballots would be contrary to the mandate of the statute to count them. Contestant's argument to the contrary entirely leaves out of view the provisions of the statute. It is plain that the statute regards erasures and obliterations as incidental to legitimate voting and that ballots containing the same are to be counted the same as others. See Pye v. Hanzel, *supra;* Hodgson v. Knoblauch, 268 Ill. 315, 109 N. E. 338, Ann. Cas. 1917E, 653.

It has been earnestly urged, and in this the trial court joins, that indecent remarks and drawings on ballots should be considered identifying marks and that we overrule our prior decisions to the

contrary. In cases like Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500, and Frajola v. Zanna, 193 Minn. 48, 257 N. W. 660, we held that an indecent or impertinent remark was not a distinguishing mark, upon the theory that the same obviously are not made to identify the ballot. In Pye v. Hanzel we disapproved the theory of our prior decisions and said (200 Minn. 140[c], 273 N. W. 614 [c]): "Writing words such as 'square deal,' 'No good,' 'O. K.,' and abusive epithets serve to identify a ballot the same as other identifying marks and should be ground for rejecting the ballot"; but we did not decide the case upon that ground or overrule our prior decisions.

The provisions of the present election laws relating to voting and to the canvassing of ballots, Minn. St. 1941, §§ 206.16 and 206.50, reënacted prior statutes, Mason St. 1927, §§ 424 and 454. The prior laws had been judicially construed prior to the enactment of the later ones. We are not free to change at will our prior rulings construing the present election laws, because, as held in Enger v. Holm, 213 Minn. 154, 6 N. W. (2d) 101, the rule that the reënactment of a prior statute presumptively constitutes an adoption of the prior construction of the reënacted statute applies with persuasive force with respect to these particular statutes. Furthermore, the statutory rule is that courts "may be guided" by the presumption in construing statutes. L. 1941, c. 492, § 17(4). The presumption is but an aid in ascertaining the legislative intent. What we said in Pye v. Hanzel to the effect that an indecent remark written on a ballot serves to identify it constituted a disapproval of the basis for our prior holdings that such a mark is not a distinguishing one and forecast a probable change of ruling. Under the circumstances, the presumption is that the reënactment adopted the prior construction as unsettled by our decision in Pye v. Hanzel and as subject to further consideration of the question with a probable change of rule as forecast. In view of these circumstances, we think that the reënactment does not preclude a reconsideration of the question.

After all, the fact remains that an indecent remark or drawing

on a ballot serves to identify it as much as a superfluous cross or other mark and that such a remark or drawing has no legitimate connection with *bona fide* voting. We therefore hold that an indecent remark or drawing on a ballot, placed there by the voter, is a distinguishing mark and is ground for rejecting the ballot. Anything to the contrary in our prior cases, such as Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500, and Frajola v. Zanna, 193 Minn. 48, 257 N. W. 660, is overruled. Therefore, ballot exhibit F-2, which was counted for contestee under the rule of our prior cases, should not be counted for him.

We are also urged to hold that a cross mark placed opposite a blank space for writing in the name of a candidate is also a distinguishing mark. The question is an open one. In numerous cases such as Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381; Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749; Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611; Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758; and Nelson v. McBride, 117 Minn. 387, 135 N. W. 1002, we held that a cross mark placed opposite a blank space for writing in a name on a ballot is not a vote for any candidate. In Aura v. Brandt, 211 Minn. at p. 288(g), 1 N. W. (2d) at p. 387(g), there is a dictum to the effect that such a mark is without apparent purpose except to identify the ballot, and cases from Indiana, Iowa, and Nevada are cited to support that view. To these should be added Hansen v. Lindley, 152 Kan. 63, 102 P. (2d) 1058. These cases do not discuss the reasons for decision but hold that placing a mark before a blank on a ballot shows that it was done intentionally. Michigan and California, as pointed out in Aura v. Brandt, have taken an opposite view. In California the statute provides that an unauthorized mark upon a ballot shall not invalidate it unless it appears that it was placed there by the voter for the purpose of identifying the ballot. This is the same as our rule. In Hanson v. Emanuel we said (210 Minn. 274, 297 N. W. 752):

"* * * a distinguishing mark on a ballot which requires rejection of the entire ballot is one that is placed there deliberately by

the voter with intention to identify the ballot after the vote is cast and not as the result of an honest effort on the part of the voter to indicate his choice of candidates."

In Turner v. Wilson, 171 Cal. 600, 154 P. 2, the California court hold that such a misplaced cross mark, standing alone, does not warrant an inference that it was marked by the voter designedly with the intention of identifying his ballot.

Of course, where it appears that a voter intentionally placed a cross mark before a blank space, the mark is a distinguishing one which identifies the ballot. To that extent the dictum in Aura v. Brandt states the correct rule. Where such intention is not shown, as is generally the case, a different situation arises. The undeniable fact is that in voting there are many mistakes and a great deal of careless and ignorant marking of ballots. Contestant himself claims many votes irregularly and negligently cast. The cases brought to this court reveal that large numbers of voters in some respects mark their ballots irregularly, carelessly, and ignorantly. Minn. St. 1941, § 206.50(3), takes notice of that situation. It provides that when marks are made out of their proper place, but on or so near a name or space as to indicate *clearly* that the voter intended to mark such name, the vote shall be counted as so intended. It is significant that the statute does not provide that, if the voter's intention in such cases is not *clearly* ascertainable, the entire ballot shall be rejected. By providing that the vote may be counted where the intention *clearly* appears, the inference is that in other cases only the cross mark and not the entire ballot is to be rejected. In McVeigh v. Spang, 178 Minn. 578, 228 N. W. 155, we pointed out that the misplacing of a cross mark permitted an inference that the voter marked his ballot ignorantly or inadvertently. We disapproved anything to the contrary in our prior decisions based upon the authority of State ex rel. Crain v. Acker, 142 Wis. 394, 125 N. W. 952, 20 Ann. Cas. 670. The views expressed in McVeigh v. Spang are sound and are confirmed by the facts disclosed in other cases. Courts should be reluctant to disfranchise the voter. Rules rejecting ballots because of distinguishing marks have that effect in

particular cases. Our rules are quite stringent and should not be unnecessarily extended. Where, as here, there is basis therefor, the presumptions of legality, innocence, and good faith should be applied. We therefore hold that, in the absence of proof of intention to identify the ballot, the placing of a cross mark before a blank line for writing in the name of a candidate is not a vote for any candidate and is not a distinguishing mark which identifies the ballot. Anything to the contrary in Aura v. Brandt is overruled.

■ Another group involves misplaced stickers where there was no other choice indicated for the office in question. Five of these were superimposed on the headings on the ballots entitled "County Commissioner, 6th District." Others, some plain, bearing only contestant's name, and some bearing both his name and the office sought, were attached to the ballot entirely out of the place for voting for county commissioner under the headings reserved for voting for such offices as state senator, court commissioner, coroner, and superintendent of schools. All of these ballots were rejected by the trial court. In canvassing ballots the great object is to ascertain and to give effect to the intention of the voter, but that intention must be manifested as directed by statute, and only such deviation therefrom is permissible as the statute allows. Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381; Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749. Since a sticker is but a permissible substitute for writing in the name of the person voted for, it must be placed in the space reserved for writing in the name for the particular office. It is plain that the statute does not authorize the voter to mark his vote any place on the ballot that he sees fit. Section 206.50(3) provides that, if a cross mark is made out of its proper place but on or so near a name or space as to indicate *clearly* that the voter intended to mark such name, the vote shall be counted as so intended. But if the mark is not made on or near the name or space, it is clear that the statute intends that it should be rejected. It was within such limits that misplaced stickers were counted in Hanson v. Emanuel. Under the rule of that case, five of the rejected sticker votes (exhibits M-6, M-7, M-10, M-11,

and M-14) which were not counted for contestant should have been counted for him.

Since a sticker is required to be placed in the space provided for writing in the name of a candidate for a particular office, it cannot be counted as voted for him for such office if it is placed in a space for voting for some other office. So far as the particular office is concerned, such a misplaced sticker is not voted in substantial compliance with the statute. In Read v. McPherson, 255 Mich. 604, 606, 238 N. W. 477, the court held, referring to its prior decisions similar to ours in Hanson v. Emanuel, that a sticker bearing a candidate's name and the office sought by him and attached to the ballot under a heading reserved for voting for some other office should be rejected as not voted in substantial compliance with the statute, and that "the limit of liberality was reached" in the cases permitting the counting of misplaced stickers attached to the ballots substantially opposite the office voted for. We think the cited case announces the correct rule. The stickers attached to the ballots under other offices than that sought by contestant were properly rejected.

■ Another group involves two ballots from which the stickers came loose. The trial court found upon ample evidence that two of the stickers had been counted for contestant and subsequently came loose. If so, he was not entitled to count them a second time. The trial court was not inconsistent in counting a third ballot for him upon the theory that upon the recount he was a vote short in a certain precinct which could not be accounted for unless it was by counting the loose sticker for him. We sustain the court's findings.

■ Finally, contestant urges that it was error not to count for him seven ballots on which the voter indicated his choice by writing such names as "Morow," of which there were two, "D. Maryei," either "G. A. Murray" or "J. A. Murray," "Stuart Mure" with some indistinct letters after the "e" having the appearance of an irregular line extending out into the margin of the ballot, "T. A. Möri," and "Stuart A. M."

Minn. St. 1941, § 206.50(5), provides that misspellings and abbreviations shall be disregarded. But that does not mean that in writing in the name of a candidate any departure from the name should be tolerated. It must appear that the name written is at least *idem sonans* with that of the candidate. Where a name is incorrectly spelled, but the one written is *idem sonans* with that of the candidate, the vote should be counted for him; otherwise not. Likewise, where there is no other candidate with the same surname, only the surname of the candidate may be used. Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758. Such names as "Morow," "D. Maryei," "Stuart Mure" with something added on the end, and "T. A. Möri" are not *idem sonans* with "Murray." They are not a substantial rendition of the candidate's name. It is urged, however, that the name "Mori," when written in Finnish with two dots over the "o," is pronounced in that language the same as is "Murray." The argument is inapplicable here, because it does not appear that it was cast by a Finn, although there are many Finns in the district. A person's name consists of his given name and his surname. Therefore, where a voter writes the surname of a candidate with a given name other than that of the candidate, he has written a different name than the candidate's, and the ballot should not be counted for him. Keenan v. Briden, 45 R. I. 119, 119 A. 138. Thus, the ballot on which the voter wrote either "G. A. Murray" or "J. A. Murray" was correctly rejected because the name written was not contestant's. This is an additional reason for rejecting the ballot with "T. A. Möri" on it. The use of a candidate's given name and initials does not substantially comply with § 206.16(3), authorizing a voter to write in the name of a candidate in the space provided therefor, and does not serve sufficiently to identify him for purposes of voting. The ballot with the name "Stuart A. M." written on it did not substantially comply with the statute. Therefore, all the ballots in question were properly rejected under the rules stated.

Our conclusion is that four votes should be taken away from the contestee, making his total 4,860 votes; that contestant is en-

titled to six additional votes, making his total 4,818 votes; and that the decision that the contestee was elected was correct and should be affirmed.

Affirmed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.

