JOE W. DONLAN, Appellant, v. E. R. COOKE, Appellee.

No. 40942.

JUNE 20, 1931.

772

H. L. Irwin, J. E. Purcell, Hughes, O'Brien & Faville, for appellant.

Wolfe, Wolfe & Claussen, for appellee.

ALBERT, J.—At the threshold of the case we are met with the question of whether or not the appellant properly perfected his appeal, and the point raised is that he did not put up an appeal bond which appellee insists is necessary under section 11440, Code, 1927, reading as follows:

"In appeals from justices' courts or other inferior tribunals in civil causes, the appellant shall cause the case to be docketed by noon of the second day of the term to which the same is returnable, and, in case of his failure to do so, the appellee may procure the case to be docketed, and thereupon will be entitled to have the judgment below affirmed, or to have the case set down for trial upon its merits, as he may elect, and the provisions of this code as to appeals from justices' courts shall be applicable, so far as may be, to other appeals contemplated in this section."

However, we are of the opinion that this section of the statute has no application whatever to the kind of case before us. The right of appeal is not a constitutional right, and the legislature in granting a right of appeal has the power to mark out the manner, method, conditions and limitations by which an appeal may be taken. In many instances, appeals are provided for by the giving of notice and the posting of a bond, and it is quite uniformly held that where a statute so provides, both the notice and the bond must be given before the appeal is perfected. It has seen fit to provide for appeals in contests over election of county officers, and the law in relation thereto is set out in Chapter 52, Code, 1927. A review of this chapter shows that in section 1039 the authority for the appeal in this case is

found, and it is there provided that if the man then in office is defeated, if he wishes to stay the execution of the judgment, (in other words, to hold the office until the appeal is finally determined) he must put up a bond double the amount of the probable compensation, etc. This is the only bond provided for in this chapter. Such bond is not required by the statute under any other circumstances than as above specified. As applied to the facts in this case, Donlan was never in possession of the office of sheriff. He was counted out of office by the contest court in December, 1930, before he had an opportunity to receive a certificate of election and to qualify. Therefore, he was not in office and was not receiving the emoluments of the same at the time of any of the contests or any of the appeals herein, and, in our opinion, was not required to post a bond in order to perfect his appeal. Appellee's motion to dismiss the appeal is therefore overruled.

II. It is urged under the evidence in this case that the ballots were not preserved by the county auditor's office as required by law. This question has been before this court in numerous cases, starting with Davenport v. Olerich, 104 Iowa 194, where we laid down a very stringent rule governing such matters. The tendency of later cases is, however, to show a slight modification of this rule. See DeLong v. Brown, 113 Iowa 370; Murphy v. Lentz, 131 Iowa 328; Doak v. Briggs, 139 Iowa 520. Our last expression seems to be Marsh v. Huffman, 199 Iowa 788, where we said:

"While we have said that it must affirmatively appear that the ballots have been preserved with that jealous care which precludes the opportunity of their being tampered with, and, like Caesar's wife, must be shown to be above suspicion, yet we have also said that they need not be so shown beyond groundless suspicion, nor that there is no possibility that they might have been tampered with."

This statement in the *Marsh* case is bottomed largely on Mentzer v. Davis, 109 Iowa 528, where we said:

"Of course, this does not mean that they must be proven genuine beyond all suspicion, however groundless, nor that there is no possibility that they might have been tampered with. * * * What is meant is that they shall not be so exposed to the reach

of unauthorized persons as to afford a reasonable possibility of their having been changed or tampered with."

When this question arises, it always turns on the fact situation, but no good would be accomplished by setting out the extended record in this case relative to this question. We have carefully studied this record and find that, under the facts, the ballots were preserved as provided by law, and, therefore, should be counted.

█ III. There were 307 ballots before the court in this contest which did not bear the initials of any of the judges of the election, and it is insisted by appellee that these ballots should not be counted because they were not initialed by one of the judges of the election. Involved in this question is also the question that 49 of these ballots were marked with pen and ink. Appellee insists that under the authority of Kelso v. Wright, 110 Iowa 560, these ballots can not be counted. We are of the opinion that the Kelso case is not now authority for appellee's contention. A labored study of these various sections, as they originally appeared in the Australian Ballot Law passed by the 24th G. A., together with the many amendments which have been made to such laws since that time, shows that they take away the vitality of that decision. It will be further noted that the Kelso case was decided under the Code of 1873. When the Code of 1897 was adopted, a new provision was placed therein, reading, so far as this case is concerned, as follows:

"Section 1122. * * * No ballot furnished by the proper officer shall be rejected for any error in stamping or writing the indorsements thereon by the officials charged with such duties, * * * but any ballot delivered by the proper official to any voter shall, if properly marked by the voter, be counted as cast for all candidates for whom the voter had the right to vote, and for whom he has voted."

This statute has been substantially preserved in the present Code. See Section 818, Code, 1927.

We are of the opinion that this statute was enacted to meet the situation covered by the Kelso case, and some other cases which had been decided wherein the matters covered by section 1122 had been held to be vital. As we construe the law, under the aforesaid section 1122, the ballots which were uninitialed

by a judge of the election, whether the ballots of regular voters or absent voters, should be counted in determining the result in this case.

IV. Among the ballots cast, there were some marked with an ordinary black lead pencil, some with a blue lead pencil and some with pen and ink. Our statute nowhere provides as to the instrument to be used for marking. It requires only that a cross shall be made in the square in front of the name of the candidate. The use of a fountain pen is quite common among our people. Many business men carry colored lead pencils and indelible lead pencils. So long as the statute does not provide the instrument to be used for making the cross, we do not feel disposed to limit the voter in relation thereto, and our holding is that if the cross placed upon the ballot is otherwise sufficient to comply with the statute, it makes no difference what the color thereof is, or what instrument was used in making the same.

In some of the ballots, crosses were placed thereon which were not placed in the square as required by law. It is conceded by all parties that these ballots should not be counted.

In other instances, a cross was made in the party circle of both the Republican or Democrat tickets, and also a square in the circle of the Independent, Labor or Communist party. The two latter parties, however, did not nominate a candidate for the office of sheriff, and no name appeared, therefore, on the latter named ballots. It was held in Spurrier v. McLennan, 115 Iowa 461, that the fact that a cross was made in the circle of the Communist, Independent or Labor parties where the name of no nominee was printed on such ballot for the office of sheriff did not invalidate such ballot.

Other ballots were objected to on the ground that they contained identification marks. In Fullarton v. McCaffrey, 177 Iowa 64, in discussing this question we said:

"What is an identifying mark is not defined in our statute, and whether any mark on a ballot other than the cross authorized to be placed thereon was intended as a means of identifying such ballot must be determined from the consideration of its adaptability for that purpose, its relation to other marks thereon, whether it may have resulted from accident, inadvertence, carelessness or evidenced design, and the similarity of the ballot with others cast and the like. In other words, the court, in de-

ciding the issue as to whether the ballot has been marked so as to be identified by another, may and should consider all the evidence and circumstances bearing thereon, precisely as in passing on any other issue. Electors are not presumed to have acted corruptly, and identifications only which may fairly be said to be reasonably suited for such purpose and likely to have been so intended will justify the rejection of the ballot.''

To put it in another way, no hard and fast rule can be laid down in such cases. Each ballot must be considered in the light of what we said in the *Fullarton* case and dealt with accordingly.

Several ballots bore the signature of the voter, either on the front or back thereof. These ballots, of course, can not be counted.

Another ballot had written on its face ''Lets have it wet''. While the voter had the right to have his idea of the Eighteenth Amendment to the Constitution of the United States, that question was not submitted to the voters at this election, and there was no call for the voter's expression of his views thereon. While the Minnesota Supreme Court has expressed itself on a similar proposition in the case of Elwell v. Comstock, 109 N. W. (Minn.) 698, holding that it was not an identification mark, we are rather disposed to hold with the Supreme Court of the State of Washington in the case of State ex rel. Orr v. Fawcett, 49 Pac. (Wash.) 346, that such writing is an identification mark, and, therefore, the ballot should not be counted.

Three ballots were marked with a check mark instead of a cross. These ballots can not be counted.

A number of other ballots had either a square at the top of the ballot or in front of the name of some candidate, all marked out with a lead pencil. We think this might be used as an identification mark, and therefore, said ballots should not be counted. However, if these ballots were counted, Cooke would gain six ballots which would not be enough to elect him.

Two ballots had numbers written on the faces thereof. We think these should not be counted.

Two ballots had crosses in the squares in front of the names of both of the candidates for sheriff. These should not be counted.

In the light of the pronouncements herein made, we have

checked over the ballots in dispute herein. By agreement of parties, aside from the disputed ballots, Cooke had 7, 168 and Donlan 7, 174 votes. From the holding herein that the ballots that were not initialed by a judge should be counted, Cooke received 145 and Donlan 162 ballots. Thus, at this point, Cooke would have 7, 313 and Donlan 7, 336 votes. Of the balance of the votes in dispute (178) we find that 73 thereof should be rejected, and of the balance, Cooke should receive 55, which would make his total vote 7, 368, and Donlan should receive 50, which would make his total vote 7, 386, resulting in our holding that Donlan was elected by a majority of eighteen votes.

The lower court erred in finding otherwise.—Reversed.

STEVENS, DE GRAFF, WAGNER, and KINDIG, JJ., concur.

FAVILLE, C. J., takes no part.