TOM HANSON v. DOMENIC EMANUEL.[1]

May 2, 1941.

No. 32,897.

[1]Reported in 297 N. W. 749.

See 210 Minn. 51, 297 N. W. 176.

*James V. Abate* and *I. R. Galob,* for contestee-appellant.

*J. C. Henley,* for contestant-respondent.

PETERSON, JUSTICE.

This is a contest of an election of trustee of the village of Keewatin. The .election was held on December 3, 1940, to fill the offices of clerk and trustee. On the printed ballots were the names of two candidates for clerk and two for trustee with blank spaces for writing in names for each office. Contestant and contestee were candidates for trustee. In addition to the candidates whose names were on the printed .ballot, one John Jovanovich, for whom 98 ballots were cast, was a sticker candidate for clerk.

The village canvassing board found that contestee received 483 votes and contestant 478 votes and declared the contestee elected. The inspectors appointed by the district court to make a recount found that contestee received 483 and contestant 481 votes.

The district court disallowed certain votes cast for both candidates and found that contestant received 474½ votes and contestee 467½ votes and ordered judgment that the contestant was duly elected. Contestee contends that 13 votes for him were erroneously rejected. Contestant claims that one vote for him was erroneously rejected and that 12 votes for contestee were erroneously

counted. The facts with respect to the disputed votes will be stated in connection with the consideration of them.

■ There is no express statutory provision that a ballot containing a distinguishing mark is to be rejected. The reason for rejecting a ballot upon which the voter has placed a distinguishing mark is that such a mark identifies the ballot and affords means for the corruption and intimidation of the voter in violation of the letter and spirit of the Australian ballot law, which provides for secrecy of the ballot as a safeguard against such evils. Pennington v. Hare, 60 Minn. 146, 62 N. W. 116. In some states there are statutes declaring all ballots illegal and void which bear distinguishing marks. Sego v. Stoddard, 136 Ind. 297, 36 N. E. 204, 22 L. R. A. 468.

Our statute seeks to give effect to the intention of the voter. By prescribing rules for the counting of certain ballots in which there is irregularity it implicitly provides that mere irregularity shall not vitiate the entire ballot. 3 Mason Minn. St. 1940 Supp. § 601-6(10)k (formerly 1 Mason Minn. St. 1927, § 454), provides that all ballots shall be counted for the persons for whom they were intended, so far as such intent can be ascertained from the ballots themselves, and that, among others, the following rules shall be observed in determining such intent:

Subd. 2. The name of a person written in the proper place by a voter shall be counted for such person although no cross mark is made.

Subd. 3. When a cross mark is made out of its proper place but on or near a name, the vote shall be counted as intended.

Subd. 5. Abbreviations and misspelling of the names of candidates shall be disregarded if it can be ascertained from the ballot for whom it was intended.

Subd. 6. The ballot shall be counted for a part of the candidates where the voter's choice for a part only is ascertainable.

Subd. 8. The intention of the voter shall be given effect in the case of erasures and attempted erasures.

Decisions can be found in other jurisdictions holding all the foregoing irregularities to be distinguishing marks and grounds for rejecting the entire ballot.

The construction of the statute governing elections has been adopted which gives effect to the intention of the voters and prevents the violation of secrecy of the ballot. In Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947, we said:

"Mere irregularities in the marking of ballots, such as neither create uncertainty as to the voter's choice nor serve as distinguishing signs, violative of secrecy, are not cause for rejecting ballots. * * * It is otherwise *where the marks used are inappropriate to express the voter's intention, or are so distinct and individual in character as to furnish means of identifying the ballot as that of the particular voter.*" (Italics supplied.)

Absent, as here, a statute enumerating certain marks as illegal and distinguishing regardless of intent, a distinguishing mark on a ballot which requires rejection of the entire ballot is one that is placed there deliberately by the voter with intention to identify the ballot after the vote is cast and not as the result of an honest effort on the part of the voter to indicate his choice of candidates. The test is whether or not a plausible reason for the mark may be suggested consistent with honesty and good faith of the voter. Jennings v. Brown, 114 Cal. 307, 46 P. 77, 34 L. R. A. 45; Hodgson v. Knoblauch, 268 Ill. 315, 109 N. E. 338, Ann. Cas. 1917E, 653; Winn v. Blackman, 229 Ill. 198, 82 N. E. 215, 120 A. S. R. 237; Parker v. Orr, 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227; Parker v. Hughes, 64 Kan. 216, 67 P. 637, 56 L. R. A. 275, 91 A. S. R. 216; Lankford v. Gebart, 130 Mo. 621, 32 S. W. 1127, 51 A. S. R. 585; White v. Slama, 89 Neb. 65, 130 N. W. 978, Ann. Cas. 1912C, 518; McMahon v. Polk, 10 S. D. 296, 73 N. W. 77, 47 L. R. A. 830.

All marks and irregularities are not to be taken as identification of a ballot and grounds for rejecting it. The Illinois court in considering the question under a statute similar to ours in Hodgson

v. Knoblauch, 268 Ill. 315, 109 N. E. 338, Ann. Cas. 1917E, 653, said:

"Any one of an infinite variety of marks may be determined upon for the purpose of identification and may constitute a distinguishing mark, and, on the other hand, marks may be so connected with an apparently honest effort of the voter to indicate his choice of candidates that it is evident they were not made for the purpose of identifying the ballot and should not be regarded as distinguishing marks. The body of electors includes not only the well informed, capable and careful voter, but also the ignorant, incapable and careless voter, and if a mark is reasonably connected with an effort of the voter to cast his ballot and can be reasonably explained, consistently with an honest purpose on his part, it is not a distinguishing mark and the ballot should not be rejected."

First we shall consider in paragraphs (a) to (f) the ballots which were cast for contestee and which he claims were erroneously rejected as bearing distinguishing marks. Then we shall consider in paragraphs (g) to (p) the ballots which contestant questions and which he claims support the decision. See Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611; Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758.

(a) The first group consists of five ballots, exhibits G-1, 3, 4, 11, 40, on which stickers for the office of clerk were misplaced either just above or just below the names of the candidates printed thereon. The stickers were prepared before the election for use for voting. The name of John Jovanovich for clerk with a cross mark before it in a square was plainly printed on them. The stickers were a little wider than the space provided for their use for writing in the names of candidates. No vote was marked for either of the candidates whose names appeared on the printed ballots. The stickers were apparently used for the sole purpose of voting for Jovanovich as the sticker candidate for clerk. There is no basis for any inference that they were to be used for any

other purpose, much less that they were to be used to identify the ballots.

A sticker is not *per se* an identification mark. Quinn v. Markoe, 37 Minn. 439, 35 N. W. 263. Its use is authorized by law. Snortum v. Homme, 106 Minn. 464, 119 N. W. 59. The question before us is not whether the sticker votes should be counted for Jovanovich as the sticker clearly indicates was the voter's intention, but whether the misplacing of the sticker on the ballot constitutes a mark of identification. The stickers were all alike. One no more than another was a distinctive mark. The misplacement was no more a mark of identification in one case than in another. The evidence all points toward irregularity, not wrongdoing.

In Murray v. Waite, 113 Me. 485, 94 A. 943, Ann. Cas. 1918A, 1128, the court held that while certain misplaced stickers were not to be counted as votes, they did not constitute distinguishing marks; but that where the intention of the voter was clear, as where a double sticker "that is two stickers bearing the same name, and separated except at the left hand end," were placed nearly over the name of the same candidate for alderman, the ballot was to be counted.

The only permissible conclusion is that the misplacement of the stickers was an irregularity and not an identification mark. Hence the court erred in holding that the five ballots on which there were sticker votes should not be counted for contestee.

(b) The cross outside the square opposite a candidate's name on exhibit G-37 is not a distinguishing mark. The presence of the cross is explainable as an attempted vote for the candidate, since no other mark was made for any candidate for the same office. Hodgson v. Knoblauch, 268 Ill. 315, 109 N. E. 338, Ann. Cas. 1917E, 653; 18 Am. Jur., Elections, § 198, p. 315, note 9.

In Thompson v. Redington, 92 Ohio St. 101, 110 N. E. 652, Ann. Cas. 1918A, 1161, the placing of a cross mark to the left of a blank space on a ballot, which was really not a vote for any candidate, was held, absent proof *aliunde*, not to be a distinguish-

ing mark which prevents the counting of the ballot for a candidate for another office before whose name a cross mark was properly placed.

In Nelson v. McBride, 117 Minn. 387, 135 N. W. 1002, we held that a cross placed in the square opposite a blank line to be used for writing in the name of a candidate for mayor simply was not to be counted for either of the regular candidates, since it failed to express an intention on the part of the voter to vote for either.

Contestee was entitled to have ballot exhibit G-37 counted for him.

(c) The short perpendicular lines on exhibits G-31 and 38 are not identification marks. One appears to be in ink, perhaps printer's ink. The marks were short and such as might have been made accidentally. In Frajola v. Zanna, 193 Minn. 48, 257 N. W. 660, in holding such lines not to be marks identifying the ballot, we said, "Manifestly the trial court could not clearly say that these were identification marks." These were valid votes for contestee.

(d) The irregular cross on exhibit G-8 is substantially the same size as the cross used in marking the ballot for clerk. The ballot evidently was resting on an uneven surface and the mark was retraced. "A ballot marked with a cross made with double lines usually is considered valid as indicating an attempt to make the mark plainer." 18 Am. Jur., Elections, § 188, note 10. Accord: Fullarton v. McCaffrey, 177 Iowa, 64, 158 N. W. 506, and Strosnider v. Turner, 30 Nev. 155, 93 P. 502, 133 A. S. R. 710. The ballot, exhibit 37, rejected in Pye v. Hanzel, 200 Minn. 135, p. 140 (e), 273 N. W. 611, 614, had a cross mark which was "about 20 times as wide as an ordinary cross mark and in a smudged condition." The reason for holding such a cross mark to be an identification mark is obvious, but the cross involved in that case bears no analogy to that in the instant case. The ballot should have been counted for contestee.

(e) There are cross marks in the squares before and in the vacant spaces after the names of all the candidates voted for on

exhibit G-5. The crosses in the squares indicate the voter's choice. Further marking was not necessary to accomplish that purpose. The additional crosses were made intentionally. It is hardly conceivable that the voter thought such additional crosses were necessary to vote. They were inappropriate for such a purpose. It may be that in a particular case a voter might think that such additional marks only emphasized his expression of choice and were unobjectionable. But the fact remains that such a ballot can be identified by such unnecessary marks. Since the marks cannot be attributed to the voter's attempt to express his choice, such marks ought not to be held to be mere irregularities, but distinguishing marks. The ballot was properly rejected.

(f) Exhibit G-21 has a cross mark before the name of a candidate for clerk and one both before and after the name of contestee. Exhibits G-32 and 39 were properly marked for contestee, but there were cross marks both before and after the name of a candidate for clerk. These ballots were void as having distinguishing marks on them. Pye v. Hanzel, 200 Minn. 135, p. 140(d), 273 N. W. 611. Contestee was not entitled to these three ballots.

(g) Exhibit D-4 has a cross mark opposite contestant's name and in the square opposite contestee's name a diagonal mark with a faint curl at the top and two very small curls at the bottom. This the court rejected upon the ground that the line was a distinguishing mark. We think the ruling was right. If the voter had made the line by mistake as one of the lines of a cross the ballot might be sustained on the theory that he had made the line by mistake and then, after discovering his mistake, voted as he intended, for contestant. Fullarton v. McCaffrey, 177 Iowa, 64, 158 N. W. 506, *supra;* Cameron v. Babcock, 63 S. D. 554, 262 N. W. 80, 101 A. L. R. 650; 18 Am. Jur., Elections, § 198, p. 316, note 20. The line in question is not such as is used in making a cross. It bears other lines at the top and bottom by which it can be identified. Hence contestant was not entitled to this vote.

(h) Exhibits 2-E and 3-E have cross marks on the back of them. These were properly rejected. Pye v. Hanzel, *supra,* at pp. 138, 139 (a).

(i) Each of two sticker ballots, exhibits G-12 and 22, has a cross mark in the square opposite contestee's name. These were, as they should have been, counted for him.

(j) Exhibit G-33, which was cast for contestee, was marked in lead pencil very faintly but plainly enough to show the cross mark. The fact that a cross mark which is visible is faint is no ground for rejecting the ballot.

(k) A small part of the corner of exhibit G-34, which was cast for contestee, is torn off. The evidence did not show when or by whom the tear was made. "Where a ballot appears to have been mutilated, it will be presumed to have been done after it was counted by the election officers." 20 C. J., Elections, p. 169, § 200. This accords with our decision in Pye v. Hanzel, *supra,* p. 146 (f).

(1) On exhibit G-35 the cross mark is after the name of a candidate for clerk and before that of contestee. The mark after the clerk's name was a mere irregularity which did not invalidate the ballot. Pye v. Hanzel, *supra,* at p. 141 (g).

(m) It is claimed that exhibit G-10, which was cast for contestee, should be rejected because the voter used check marks instead of crosses, one of which was a great deal larger than another. An examination of the ballot shows that the claim that one check mark was substantially larger than another is without merit. Where a voter uniformly indicates his choice by check marks instead of crosses his vote should be counted. 3 Mason Minn. St. 1940 Supp. § 601-6 (10) k (7) (formerly 1 Mason Minn. St. 1927, § 454[7]) ; Pye v. Hanzel, *supra,* at p. 141 (g).

(n) The sticker for clerk on exhibit G-14 is in its proper place upside down. This was a mere irregularity. We agree with the trial court that the ballot should have been counted for contestee.

(o) The sticker for clerk on exhibit G-15 is in its proper place but protrudes over the edge of the ballot a little. The manner of

attaching the sticker was merely irregular. It was properly counted for contestee.

(p) The name of the sticker candidate for clerk was written in on two ballots, exhibits G-28 and 30, by the voters, who spelled his name correctly phonetically, Yovanovich, instead of Jovanovich, as the candidate spelled it. The ballot was counted as it should have been under 3 Mason Minn. St. 1940 Supp. § 601-6(10)k(5) (formerly 1 Mason Minn. St. 1927, § 454[5]), which reads:

"The judges shall disregard misspelling or abbreviations of the names of candidates, if it can be clearly ascertained from the ballot for whom it was intended."

■ Contestant called three voters and contestee called one who admittedly were not qualified to vote. Contestee's witness testified that he voted for contestant. One of those called by contestant testified that he voted for contestee. Another, Rizzio, testified that he voted for contestant. After the witness had so testified, counsel for contestant stated, "I have been anticipating some of these voters would make such an answer as that to that question," and obtained leave to cross-examine. He then called a Mrs. Rico, who testified that she voted for contestant and not for contestee. Her testimony was unimpeached and uncontradicted. She was contestant's witness. Her testimony under the circumstances must be held to show that she voted for contestant. Pye v. Hanzel, *supra,* at p. 146(g); Nelson v. Bullard, 155 Minn. 419, 194 N. W. 308. The court below apportioned her vote one-half to contestant and one-half to contestee. There was no valid reason for such action. An illegal vote cannot be counted at all. There is no authority in law for splitting a vote, much less an illegal one, and counting the parts for different candidates. We referred in Berg v. Veit, 136 Minn. 443, 162 N. W. 522, to certain cases holding that illegal votes may be apportioned where it cannot be ascertained for whom they were cast, but held that there can be no apportionment where, as here, the evidence shows for whom the illegal votes were cast. Contestee was entitled to have the illegal

vote rejected. Contestant and contestee each lose one-half a vote as a result of our holding.

Nine of the questioned ballots which the court below rejected should have been counted for contestee. None of the ballots questioned by contestant which the court rejected should have been counted for him. The other ballots questioned by contestant were properly counted for contestee. The illegal vote of Mrs. Rico should not have been counted at all. These changes make contestee's total 476 and contestant's 474. Contestee was entitled to a decision that he was duly elected.

Reversed and judgment ordered in favor of contestee.

