STATE EX REL. AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, LOCAL
UNION NO. 9, AFL, v. HARRY HANSON.
UNITED PUBLIC WORKERS, LOCAL 77, CIO, RESPONDENT.[1]

August 12, 1949.

No. 34,797.

*William D. Gunn,* for appellant.
*Hall, Smith, Enkel & Hedlund,* for respondent United Public
Workers, Local 77, CIO.

[1]Reported in 38 N. W. (2d) 845.

*J. A. A. Burnquist,* Attorney General, and *George B. Sjoselius,* Deputy Attorney General, for respondent Harry Hanson as state labor conciliator.

MAGNEY, JUSTICE.

This case comes to the writer by reassignment.

Petitioner below appeals from an order of the district court of Ramsey county quashing a writ of certiorari and dismissing proceedings for review of the action of the state labor conciliator.

The AFL Local petitioned for certiorari, asserting that the labor conciliator, upon request of that Local, had made a preliminary investigation of a controversy for representation arising between the AFL and CIO unions as to an appropriate bargaining unit for employes of the Minneapolis General Hospital. Under the provisions of M. S. A. 179.16, the conciliator ordered an election to determine whether the employes wished to be represented by the AFL or the CIO. The election was thereupon held. At that election 400 ballots were cast. All parties concede that one ballot was void. Of the other 399 ballots cast, 199 were for CIO and 199 for AFL. The remaining one ballot creates the controversy here. This printed ballot reads in part as follows, with the letters in the squares having been inserted by the voter:

"I WANT AMERICAN FEDERATION OF
STATE, COUNTY, & MUNICIPAL EMPL.,
LOCAL #9, AFL, TO REPRESENT ME          AFL
FOR COLLECTIVE BARGAINING PURPOSES.

"I WANT UNITED PUBLIC WORKERS
LOCAL 77, CIO, TO REPRESENT ME          NO
FOR COLLECTIVE BARGAINING PURPOSES.

"I WANT NEITHER UNION TO REPRE-
SENT ME.

"MARK ONLY ONE PLACE  DO NOT SIGN BALLOT."

The labor conciliator, after receiving a report from the agent of the division of conciliation conducting the election and after a hearing, concluded that the contested ballot could be identified and therefore that it offended the requirement of a secret ballot. The conciliator thereupon rejected the ballot and dismissed the proceedings brought for investigation and certification of a representative, because neither union had secured a majority of the ballots which he considered valid.

After issuance of the writ of certiorari, the district court conducted a hearing, at which the decision of the conciliator was challenged by the AFL and supported by the CIO. The court affirmed the action of the labor conciliator, dismissed the proceedings, and set aside the stay of proceedings below.

Appellant assigns as error the district court's affirmance of the conciliator's order. It takes the position that the challenged ballot should be counted as a vote for AFL, contending that as a matter of law the ballot did not violate the rule of secrecy or fall within the rule relating to identifiable ballots; that the intention of the voter was clear; and that consequently the ballot should be counted for AFL. It contends that if correct rules of law had been applied to the facts the labor conciliator could not have found a tie vote.

M. S. A. 179.16, subd. 2, reads as follows:

"When a question concerning the representative of employees is raised by an employee, group of employees, labor organization, or employer the labor conciliator or any person designated by him shall, at the request of any of the parties, investigate such controversy and certify to the parties in writing, the name or names of the representatives that have been designated or selected. * * * In any such investigation, the labor conciliator may provide for an appropriate hearing, and *may take a secret ballot* of employees or utilize any other suitable method to ascertain such representatives, but the labor conciliator shall not certify any labor organization which is dominated, controlled, or maintained by an employer. If the labor conciliator has certified the representatives as herein provided, he shall not be required to again consider the matter for a

period of one year unless it appears to him that sufficient reason exists." (Italics supplied.)

The sole question in the case concerns the proper disposition of the one ballot not marked according to directions. There can be no question that the contested ballot which was marked "AFL" and "No" respectively in the squares opposite the choices between AFL and CIO unions expresses the intention of the employe voter. He should have expressed his intention by simply placing the proper mark in the square opposite his choice. But intent is not the sole issue here. In In re Colonial Sand & Stone Co. Inc. 10 LRRM 297, a case decided by the New York Labor Relations Board, a ballot on which an employe placed a "V" in the square instead of an "X" as required by the board's rule was held void and not entitled to be counted. The board in its opinion stated:

"* * * This may have expressed his intent, but that is not the sole issue.

"Elections to be fair must be secret. Any mark on a ballot which distinguishes it is fatal. Whether a ballot is specially marked in order that it may afterwards be identified as having been cast by a particular person is not important. It is enough that it may [be] susceptible of being identified as such. * * * The 'V' used on this ballot distinguished it from the other ballots cast, which were all marked with an 'X'. Experience in conducting elections of this kind convinces the Board that to compel strict adherence to the requirement that an 'X' be marked on ballots eliminates ex post facto exercise of the Board's discretion, and is more likely to result in fair elections, free from suspicion or question."

So here, the ballot expressly gave the following direction prominently displayed: "Mark only one place," which direction was disregarded.

In International Nickel Co. Inc. 17 N. L. R. B. 458, 460, 5 LRRM 325, a decision by the National Labor Relations Board, the board stated:

"* * * the disputed ballots were not cast in the manner required by the rules of the election, although the election rules were prominently printed upon each ballot. These ballots were capable of identification and should not be counted." See, also, Burlington Mills Corp. 56 N. L. R. B. 365, 14 LRRM 148.

The opinion in Semi-Steel Casting Co. v. N. L. R. B. (8 Cir.) 160 F. (2d) 388, 392, quotes the following from Burlington Mills Corp. 56 N. L. R. B. 368:

"* * * To permit the counting of ballots which, regardless of specific instructions appearing thereon, nevertheless are signed or contain markings clearly identifying the voter, clearly would open the door to the exertion of influence such as to prevent the exercise of the voter's free choice."

The markings on this ballot were such that the voter might be identified, and as stated in Elwell v. Comstock, 99 Minn. 261, 270, 109 N. W. 113, 698, 702, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270:

"* * * It is unnecessary that the mark be of such a character as to enable every person inspecting it to identify the voter. The purpose of the statute in prohibiting marks of identification is not wholly that of secrecy, but in part, perhaps mainly, to prevent the corruption of the voter, and to secure a free and untrammeled expression of the popular will. Any mark placed upon a ballot, therefore, by which the voter may be identified by any person, vitiates the ballot." See, Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611.

Also, aside from the above, the conciliator had discretionary power to refuse to count the ballot because of the markings already described. The statute gives the conciliator wide discretion and latitude in the selection of a bargaining agent. This feature of the statute was commented upon in Warehouse Employees Union v. Forman Ford & Co. 220 Minn. 34, 18 N. W. (2d) 767. Under the statute, he may arrange for an election to *aid* him in the determination of a collective bargaining agent. He did so in this case. This procedure does not involve an election to public office, and decisions of this

court passing upon ballots with distinguishing marks may be very helpful, but not binding here. The conciliator was conducting this election to *aid* him. In his opinion, the ballot in question contained identifying markings, and therefore should not be counted. His finding is not arbitrary, oppressive, and unreasonable in view of the appearance of the ballot itself and the explicit instructions thereon. The wide discretion with which he is clothed was not abused.

Order affirmed.

PETERSON, JUSTICE (specially concurring).

Because I agree with the majority, it is with some hesitation that I add anything.

1. A voter is required to mark his ballot with a cross mark opposite the name of the candidate or proposition voted for or with some other *uniform* mark so placed. M. S. A. 206.16, 206.50(7). A voter is prohibited from placing "any mark as a means of identification" upon any ballot cast by him. § 206.17. It follows that a voter is permitted to mark a ballot for the sole purpose of indicating his choice of candidates or his will with respect to a proposition. "The intent of the voter must be shown and indicated as required by the statute." Pye v. Hanzel, 200 Minn. 135, 138, 273 N. W. 611, 613.

A distinguishing mark on a ballot is one made by a voter which is not an honest effort to indicate his choice of candidates or his will with respect to a proposition and which is effective to identify his ballot, but a mark placed on a ballot in an honest effort to indicate his choice and not to identify his ballot is not a distinguishing mark even though such a mark might identify his ballot. Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381. A mark placed upon a ballot is no less a distinguishing one, even though it is indicative of the voter's choice or will, if it is not made for the purpose of indicating the voter's intention in the manner required by statute, if the mark is inappropriate to express such intention, or if the mark is so distinct and individual in character as to furnish means of identifying the ballot. Hanson v. Emanuel, 210 Minn. 271, 274,

297 N. W. 749, 752, where, quoting from Bloedel v. Cromwell, 104 Minn. 487, 489, 116 N. W. 947, 948, we said:

"Mere irregularities in the marking of ballots, such as neither create uncertainty as to the voter's choice nor serve as distinguishing signs, violative of secrecy, are not cause for rejecting ballots. * * * It is otherwise *where the marks used are inappropriate to express the voter's intention, or are so distinct and individual in character as to furnish means of identifying the ballot as that of the particular voter.*"

In applying these rules, we have held to be indicative of honest effort to express the voter's intention such marks as a cross mark (or the uniform mark used by the voter in marking his ballot) placed in the space intended for the purpose or so near thereto as to show the voter intended to make it there, erasures, obliteration of cross marks, retracings, heavy cross-mark lines, flourishes, other lines incidental to making cross marks, a cross mark opposite a blank line for writing in names but under the line having the name of a candidate, a line showing an incomplete cross mark, a cross mark not in the square for the purpose but so close to it as to indicate an attempt to put it there, and other like marks and lines which are made in the process of attempting to vote. Murray v. Floyd, 216 Minn. 69, 11 N. W. (2d) 780; and Aura v. Brandt; Hanson v. Emanuel; Pye v. Hanzel, *supra.*

On the other hand, we have held to be identifying marks such marks as are inappropriate for the purpose of indicating the voter's choice or will, or of attempting to do so. Examples of such are indecent remarks and drawings on the face of the ballot, cross marks and numbers on the back thereof, check marks placed after the cross marks used to mark the ballot, circles made around cross marks, cross marks so placed as to show that they were not made for the purpose of voting, parallel lines to right opposite name of candidate, and the like. Murray v. Floyd; Aura v. Brandt; Hanson v. Emanuel; Pye v. Hanzel, all *supra.*

While both a cross mark and a check mark are appropriate to indicate the voter's choice or intent, the use of only one is permissible, and the use of both constitutes an identification mark. Pye v. Hanzel, *supra*. So, also, use of more than one cross mark, as where one is placed before and another after the candidate's name, constitutes identification of the ballot, even though a cross mark is a proper one for purposes of voting. Murray v. Floyd and Hanson v. Emanuel, *supra*. A ballot must be uniformly marked—a cross mark and other marks cannot be used on the same ballot without identifying it. Aura v. Brandt and Pye v. Hanzel, *supra;* Hughes v. Upson, 84 Minn. 85, 86 N. W. 782. Likewise, writing on the ballot by the voter the name of another person, the word "tiffany," and the word "hillman" were held to be identifying marks under the rule. Doepke v. King, 132 Minn. 290, 156 N. W. 125. In this respect our rule is in accord with the authorities elsewhere. Hunt v. Campbell, 19 Ariz. 254, 169 P. 596 (writing the name "Wilson" on a ballot cast for Woodrow Wilson for President); Donlan v. Cooke, 212 Iowa 771, 237 N. W. 496 (writing "Lets have it wet" on a ballot for county officers); Matter of O'Brien, 180 App. Div. 853, 168 N. Y. S. 71 (writing "O'Brien the Taxi man" on a ballot cast for Mr. O'Brien); Evans v. Reiser, 78 Utah 253, 264, 2 P. (2d) 615, 620 (writing such words as " 'yes,' 'no,' 'void,' 'mistake,' 'except sheriff,' 'straight ticket,' 'Preece,' 'straight,' 'counted,' 'Kuminist,' 'prohibition enforced,' 'none other,' 'out,' 'Tony,' 'all,' 'now,' 'sc. Dem.' "); State ex rel. Orr v. Fawcett, 17 Wash. 188, 49 P. 346 (writing word "rats"). See, Boland v. City of LaSalle, 370 Ill. 387, 19 N. E. (2d) 177. As said in the Evans case by the Utah court (78 Utah 273, 2 P. [2d] 623) :

"As generally understood, an identifying or distinguishing mark is such a mark as will enable a person from a description of the mark upon the ballot to single it out and separate it from the rest of the ballots. It is difficult to perceive of any marking on a ballot other than those permitted by our statute that may not serve as an identification or distinguishing mark."

Prior to our decision in the Murray case we had held that super-fluous marks and irrelevant words written upon a ballot by a voter, expressive of his intention, which had been indicated by appropriate marking of his ballot, were not identification marks. Frajola v. Zanna, 193 Minn. 48, 257 N. W. 660; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270; Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500. In the Truelsen case, two of the justices (Mr. Justice Lewis and Mr. Justice Calvin L. Brown) expressed the view that such words and similar markings constituted identification marks. In the Pye case, we indicated that the views of the two justices mentioned were sound and said (200 Minn. 140, 273 N. W. 614):

"* * * Writing words such as 'square deal,' 'No good,' 'O. K.,' and abusive epithets serve to identify a ballot the same as other identifying marks and should be ground for rejecting the ballot. Justices Lewis and Calvin L. Brown were of the same opinion in Truelsen v. Hugo, *supra*. Our cases seem to have settled the rule otherwise."

Because the question had not been decided right, like Banquo's ghost, it would not "down." Apparently our decisions in the Frajola, Elwell, and Truelsen cases were not acceptable to the bench and bar. Obviously, they should not have been. In the Murray case the trial judge (Judge Freeman of the eleventh judicial district) and counsel requested us to reëxamine the question. This we did. We could not do otherwise, because of our obligation to the bench, the bar, and the law itself to decide the question right. As a matter of law and common sense, we held such marks to be identification marks, overruling our prior decisions to the contrary, and said (216 Minn. 73, 11 N. W. [2d] 784):

"After all, the fact remains that an indecent remark or drawing on a ballot serves to identify it as much as a superfluous cross or other mark and that such a remark or drawing has no legitimate connection with *bona fide* voting. We therefore hold that an indecent remark or drawing on a ballot, placed there by the voter, is a distinguishing mark and is ground for rejecting the ballot.

Anything to the contrary in our prior cases, such as Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500, and Frajola v. Zanna, 193 Minn. 48, 257 N. W. 660, is overruled. Therefore, ballot exhibit F-2, which was counted for contestee under the rule of our prior cases, should not be counted for him."

Prior to our decision in the Murray case, the Washington court reached the same conclusion in State ex rel. Orr v. Fawcett, *supra*. When the Iowa court (also prior to the Murray case) was confronted in Donlan v. Cooke, *supra,* with the necessity of making a choice between the rule announced in State ex rel. Orr v. Fawcett and our rule as it was announced in Elwell v. Comstock, *supra,* it squarely refused to follow our rule and adopted that of Washington. The court said (212 Iowa 776, 237 N. W. 498):

"Another ballot had written on its face 'Lets have it wet'. While the voter had the right to have his idea of the Eighteenth Amendment to the Constitution of the United States, that question was not submitted to the voters at this election, and there was no call for the voter's expression of his views thereon. While the Minnesota Supreme Court has expressed itself on a similar proposition in the case of Elwell v. Comstock [99 Minn. 261], 109 N. W. 113, 698 [7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270], holding that it was not an identification mark, we are rather disposed to hold with the Supreme Court of the State of Washington in the case of State ex rel. Orr v. Fawcett [17 Wash. 188], 49 Pac. 346, that such writing is an identification mark, and, therefore, the ballot should not be counted."

In the Murray case, we settled our law in accordance not only with the weight of authority, but also with common sense and reason, to the effect that irrelevant remarks and drawings on a ballot constitute distinguishing marks and grounds for invalidating it.

As applied here, the rules stated require rejection of the ballot in question upon at least two grounds, either one of which is sufficient, viz.: (1) It was marked with the letters "AFL," which, while indicative of the voter's intent, were inappropriate for mark-

ing the ballot; and (2) assuming, contrary to the fact, that the use of the letters "AFL" was permissible as a voting mark, the ballot was not only marked with two separate marks, which was not only not permissible but also served to identify the ballot.

The letters "AFL" were inappropriate for expressing the voter's intention. He plainly was required to say either "Yes" or "No." He said neither. In the language of the Bloedel case, 104 Minn. 487, 116 N. W. 947, *supra,* quoted in Hanson v. Emanuel, 210 Minn. 271, 274, 297 N. W. 749, 752, the voter used marks which were not only *"inappropriate,"* but also *"so distinct and individual in character as to furnish means of identifying the ballot"* and which consequently constituted distinguishing marks.

By using the letters "AFL" in one space and the word "No" in another, the voter did not uniformly mark his ballot, and thus he identified it under the rule. See, Aura v. Brandt; Pye v. Hanzel; and Hughes v. Upson, all *supra.* Any person informed as to the manner in which this particular ballot was marked could have picked it out from the others. In fact, that is precisely what the conciliator did.

2. So far as the points stated are concerned, the Truelsen and Elwell cases, cited in the dissenting opinion, and the Frajola case are not law, for the reason that in the Murray case we overruled those cases so far as they held otherwise. Overruled cases are not authority and will not be followed. Ryan v. Hennepin County, 224 Minn. 444, 29 N. W. (2d) 385. Hence, the dissenting opinion finds no authoritative support in our law. Citation of overruled cases serves only to make muddy water which had been clear.

3. We have held many times, quoting decisions written by Mr. Chief Justice Marshall of the Supreme Court of the United States (these are cited in our cases found in 5 Dunnell, Dig. & Supp. § 8820, note 86), that the authority of a decision is coextensive with the facts upon which it is based and with what was actually decided with respect to such fact situation. The language of a decision should be considered in the light of these factors. Language derives meaning from the circumstances and time of its use—the

setting communicates both content and color to words. Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. (2d) 878. Language of a decision taken out of its context and considered without regard to the facts and circumstances thereof and what was actually decided is apt to be misleading. Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327. Transgression of this elementary rule for reading decisions is bound to produce a distortion of the law rather than an accurate picture thereof. Here, the dissenting opinion takes excerpts from prior cases with parts deleted and with utter disregard of what the cases decided, the fact situations which they involved, and the aids which such factors furnish in determining what the excerpts mean, and it exhibits those excerpts as holding precisely the opposite of what the cases from which they were taken decided.

LORING, CHIEF JUSTICE (dissenting).

Under the provisions of M. S. A. 179.16, the conciliator ordered an election to determine whether the employes wished to be represented by the AFL or the CIO.

A balloting was conducted December 9, 1947. This balloting resulted in 400 votes cast, one of which was conceded by all parties to be void. Of the remaining 399 votes, 199 were for the CIO and 200 or 199 votes for the AFL, depending upon whether the one ballot here in controversy was rightly ruled out as void.

Section 179.16, entitled "Representatives for Collective Bargaining," subd. 2, provides that the conciliator "may take a secret ballot."

What was the legislative intent in providing for a "secret ballot" of employes, once such a method of investigation had been chosen by the conciliator? The provisions appearing in subd. 2 were in the act when it was first passed. L. 1939, c. 440, § 16. Prior to that date, no decisions of the National Labor Relations Board had defined a "secret ballot" under the provisions of Sec. 9(c) of the National Labor Relations Act (49 Stat. 449, as amended), from which provisions of the Minnesota act may have been adopted. See, 24 Minn. L. Rev. 217-226 (1939-1940).

The few cases decided by the National Labor Relations Board dealing with contested elections, which had been published *prior to the adoption of the Minnesota provisions,* relate solely to the discretion of the National Labor Relations Board in rejecting spoiled or void ballots in determining the *total number of votes cast* in the N. L. R. B. election. In re Sorg Paper Co. (1938) 9 N. L. R. B. 136, 3 LRRM 249, 2 *Id.* 516, decided nothing about the manner of marking ballots. In re Calumet Steel Div. of Borg-Warner Corp. (1938) 7 N. L. R. B. 340, 2 LRRM 279, simply held that where two out of 431 ballots reported cast were spoiled or void only 429 ballots would be counted as cast. The issue on the hearing in that case was to determine questions raised as to eligibility of certain employes to vote. There was no question concerning the manner in which the ballot was marked. Cf. Matter of Interlake Iron Corp. (1938) 4 N. L. R. B. 55, 1A, LRRM 375.

In re International Nickel Co. Inc. (1939) 17 N. L. R. B. 458, 460, 5 LRRM 325, relied upon by defendant United Public Workers, was decided in November 1939 *after* the adoption of the Minnesota act. That case merely contains the statement that the disputed ballots were not cast in the manner required by the rules of the election,—

"although the election rules were prominently printed upon each ballot. These ballots were capable of identification and should not be counted. Neither should blank, spoiled, or void ballots be counted in determining the total number of votes cast in the election."

Nothing in that opinion shows the manner in which the votes were marked. Therefore, it can have no weight on the question here presented. Both the Burlington Mills Corp. case (1944) 56 N. L. R. B. 365. 14 LRRM 148, and In re Colonial Sand & Stone Co. Inc. (1942) (N. Y. L. R. B.) 10 LRRM 297, cited by defendant United Public Workers, were decided *after* the adoption of the Minnesota act. The Burlington Mills Corp. case contains no statement concerning the nature of the contest upon which the board was to pass. The Colonial Sand & Stone Co. case is distinguishable to the extent that

a marking with a "V" in the square, rather than with an "X," required by the board's rule, was an unusual mark which showed the voter's intention in an uncertain manner, as well as being a peculiar mark of identification.

In ascertaining the intent of the legislature in providing for a secret ballot in the Minnesota labor relations act, we must look to the rules of law governing unusual markings on a ballot, as construed by this court[2] prior to the adoption of the statute, since at that time those were the only rules the legislature was aware of. If the legislature had intended that other rules should govern the "secret ballot" or that the conciliator was to be endowed with arbitrary power to reject ballots without review in the courts, the legislature would, no doubt, have said so in unmistakable language.

---

[2]Since the issue is the intent of *our* legislature, decisions of the courts of other jurisdictions construing different statutes governing political elections are not in point. This is especially true where the decisions are based upon statutes which specify in exact detail the manner of marking ballots and have no provision regarding the intent of the voter. See, *e. g.*, Evans v. Reiser (1931) 78 Utah 253, 261-262, 2 P. (2d) 615, 619, where the statute (Comp. Laws of Utah 1917) required the cross mark to be two straight lines as nearly equal in length and crossing each other as near the center of each line as practicable (§ 2215), and required (§ 2217):

"When only one officer for any office is to be elected, if the voter marks in squares opposite the name of more than one candidate therefor; or if, having marked the circle of one ticket, he shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, *such vote shall not be counted for such office.*" (Italics supplied.)

See, also, Arizona Civil Code, §§ 2929, 2932, 2940, 2941, 2943 (2, 3), and 2955, construed in Hunt v. Campbell (1917) 19 Ariz. 254, 279-280, 169 P. 596, 606; Iowa Code 1931, § 815 (Iowa Statutes Ann. 1946, § 49.98), which required that "ballots shall be counted according to the markings thereon, respectively, as provided in sections * * *, and not otherwise"— the basis of Donlan v. Cooke (1931) 212 Iowa 771, 237 N. W. 496; N. Y. Election Law, § 219, McKinney's Consol. Laws of New York Ann. c. 17, in effect when In re O'Brien (1917) 180 App. Div. 853, 168 N. Y. S. 71, was decided. These statutes are unlike our own political election statutes and wholly different from § 179.16.

In Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500, this court construed G. S. 1894, § 141, which read:

"In the counting of ballots cast at any election, all ballots shall be counted for the persons for whom they were intended, so far as such intent can be clearly ascertained from the ballot itself."

The court considered the question of the manner in which the intention of a voter must be expressed in order that his vote may be counted. The plaintiff contended that every vote should be counted if the voter's intent could be clearly ascertained from the face of the ballot, regardless of the method or manner in which the ballot was marked. Opposite the name of one candidate in the space provided for the voting mark appeared the word "No," following which there was a cross mark. Opposite the name of the contestant was the word "Yes," followed by a cross. The court said that the voter's intention was very clear. He intended to make sure of his vote for the contestant.[3]

The distinction between a mark placed on the ballot for the purpose of identification and marks used by a voter in such manner that they were apparently made in an attempt to indicate the

---

[3]Nothing in Murray v. Floyd (1943) 216 Minn. 69, 11 N. W. (2d) 780, overrules this part of Truelsen v. Hugo. The Murray case had not been decided when the legislature was considering the meaning of "secret ballot" as used in § 179.16. Moreover, the Murray case overruled only that part of the Truelsen case which sustained an indecent remark or drawing on a ballot as showing the intent of the voter. See, 216 Minn. at pp. 72-74, 11 N. W. (2d) at pp. 783-784. Truelsen v. Hugo considered a number of ballots. Exhibit 85 contained a vulgar expression after the name of the contestant. This ballot was sustained in the Truelsen case, and this is the part of that case that was overruled by the Murray case. Such a ballot is not involved here. Exhibit 6 in the Truelsen case was marked in the same manner as the contested ballot in the instant case and was held valid. The holding in regard to this ballot was not overruled by the Murray case. Any statement to the contrary is necessarily based upon a superficial examination of the Murray case as well as of the Truelsen case. Such a statement tends to confuse rather than clarify any issue in the case at bar. Certainly the statute, which is now M. S. A. 206.50, governing the intent of the voter, is still the law.

voter's choice of a candidate or of measures was carefully expounded in 1929 in the case of In re Election Contest Itasca County, 178 Minn. 578, 228 N. W. 155. There, the court pointed out that marks made by the voter upon ballots in a place or (178 Minn. 584, 228 N. W. 157) "in such manner that it can reasonably be seen or inferred that they were made in an attempt to indicate his choice" or vote for candidates or measures were held not to be identifying marks. A comprehensive opinion in that case examined similar rules in other jurisdictions outlining situations in which marks had been placed by voters on the backs of ballots—initials, signatures, or other facts from which the court could draw reasonable inferences that they had been made intentionally for identification. While the court stated that the inferences to be drawn from the whole ballot as to whether a mark is an identifying mark and the ballot therefore void was a question of fact for the district court, the opinion sets out specific rules of law establishing the limits within which the court may draw inferences as to the validity of the ballots in question and the principles which must guide the finder of fact in reaching conclusions from the balloting. Among these rules is the well-established requirement that if it can be reasonably seen or inferred *that the marks were made in an attempt to indicate the choice or vote for the candidates or measures to be voted upon* the marks should be held *not* to be identifying marks. See, Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947 (signed ballot). In Elwell v. Comstock, 99 Minn. 261, 270, 109 N. W. 113, 698, 702, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270,[4] this court, speaking through Mr. Justice Brown, stated the rule to be that "Any mark placed upon a ballot, therefore, by which the voter may be identified by any person, vitiates the ballot." In the syllabus by the court, the rule laid down in the opinion was interpreted as follows:

---

[4]The Elwell case is nowhere mentioned or overruled in Murray v. Floyd, 216 Minn. 69, 11 N. W. (2d) 780, *supra*, nor is it cited in the whole of Vol. 216 Minnesota Reports. The only context in which cases were being overruled in the Murray case, namely, indecent remarks or drawings on the ballot, did not arise in the Elwell case, nor are we concerned with such remarks in the case at bar.

"A ballot cast at an election, which is so marked by the elector that his identity is thereby disclosed to any person *other than the voter,* is void. (Italics supplied.)

The same distinction is clearly established in Aura v. Brandt, 211 Minn. 281, 283, 286, 1 N. W. (2d) 381, 384-385, 386. In that case, the election was held to fill the offices of a village recorder and one trustee. One question related to the counting of certain ballots claimed to have distinguishing marks upon them. Mr. Justice Peterson, speaking for the court in interpreting the rules previously established by this court, said (211 Minn. 283, 286, 1 N. W. [2d] 384, 385):

"* * * A distinguishing mark on a ballot is one made by a voter which is not an honest effort to indicate his choice either of candidates or propositions and which is effective to distinguish his ballot. *There must be some wrongful purpose on the part of the voter to identify his ballot.* Conversely, a mark placed on a ballot in an honest effort of the voter to indicate his choice and not to identify his ballot is not a distinguishing mark within the rule. Generally, it may be said that the distinction is between honesty and dishonesty in voting. *Consequently every mark by which a ballot can be identified does not invalidate it.* For example, where only one voter in a precinct votes by means of a sticker or by writing in the name of the candidate of his choice, the ballot can be identified, but it cannot be legally rejected because the voter was but exercising his right to vote in a manner authorized by law.

\* \* \* \* \*

"* * * if the mark is made so as not to identify the ballot, but to exercise the right to vote in good faith, it does not constitute a distinguishing mark." (Italics supplied.)

In Pye v. Hanzel, 200 Minn. 135, 138, 273 N. W. 611, 613, the statute provided that a uniform and indistinguishable mark be used by the voter to indicate his choice. The statute was construed to require the voter to mark his vote by an "X" mark, but if the "X" mark was not used the ballot could be counted if the voter uni-

formly used a mark other than "X" in marking his ballot. The court said, speaking through Mr. Justice Peterson (200 Minn. 138, 273 N. W. 613):

"* * * The intent of the voter must be shown and indicated as required by the statute. If there has been substantial compliance with the statute, the ballot will be counted, otherwise not. *Judges of election and courts are to ascertain the intention of the voter by following the rules prescribed by law.* Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270." (Italics supplied.)

Of course, the Bloedel case and Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381,[5] are clearly distinguishable from the situation in this case, because specific statutory requirements for valid markings of the ballot were involved; but even as to the construction of such statutes, which were express in denying recognition to a ballot if more than one mark was used, the intent of the voter governed. In the Bloedel case, the invalidated ballot was signed or marked with the name of the voter. It might be pointed out that, because of the explicit statutes, Pye v. Hanzel and Aura v. Brandt go much further than Elwell v. Comstock in considering the slightest deviation from the rules of law governing elections as a basis of invalidating the contested ballot. There are no statutes involved here other than the requirement of a "secret ballot." Therefore, we should take the view that general principles announced in the cases prior to the enactment of the law control the discretion of the labor conciliator.

In the case at bar, where the voter marked "AFL" in the square opposite "I WANT AMERICAN FEDERATION OF STATE, COUNTY, & MUNICIPAL EMPL., LOCAL #9, AFL, TO REPRESENT ME FOR COLLECTIVE

---

[5]The case of Frajola v. Zanna, 193 Minn. 48, 257 N. W. 660, cited elsewhere but not in this dissent because it is not in point, deals only with remarks of an improper sort or imperfect cross marks. The court in that opinion does not discuss the intention of the voter.

Bargaining Purposes," and "No" after "I Want Public Workers Local 77, CIO, to Represent Me for Collective Bargaining Purposes," the intent of the voting employe was perfectly plain. That much is conceded by defendants. Under such circumstances and in view of the many decisions in this state which emphasize the importance of determining the intent of the voter from the face of the ballot and from the circumstances surrounding the election, it is clear that the legislature, in providing for a "secret ballot" in § 179.16 meant to include the construction given by our courts to that phrase as known in the political election law prior to adoption of the Minnesota labor relations act. When the conciliator decided to resort to a secret ballot, the act did not endow him with a broader discretion than that set up by the rules which the courts had adopted.[6] Certainly, we must give the legislature credit for the intent to provide a fair election when it authorized the conciliator to resort to the secret ballot. It cannot be assumed that it intended to vest in the conciliator a discretion broad enough to thwart the manifest will of the voters at the election. Thus, there was no room here for exercise of discretion, where the intent of the voter was clear from the face of the ballot and the circumstances shown in the record created no contrary inference as to secrecy.

There is not a scintilla of evidence or the shadow of a circumstance which would justify a finding that the ballot under consideration was marked for any other purpose than to indicate the voter's choice—not to identify it as his. The mark upon the ballot must be such as to disclose the identity of the voter as distinguished from the nonuniformity of the ballot to a person *other than the voter*. Elwell v. Comstock, 99 Minn. 261, 270, 109 N. W. 113, 698, 702, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270. See, Burlington Mills Corp. 56 N. L. R. B. 365, 368; Semi-Steel Casting Co. v. N. L. R. B.

---

[6]Cf. Warehouse Employees Union v. Forman Ford.& Co. 220 Minn. 34, 18 N. W. (2d) 767. The effect of that decision is not changed by the construction given here to the words "secret ballot," since that case decided only that the conciliator's discretion was whether (a) to have the ballot, *or* (b) to use some other suitable method of determining representation.

160 F. (2d) 388-392. This is a common-sense rule and one in further-ance of a fair count. It protects the job and union security of the voter. Any other rule would afford an excuse for throwing out bal-lots marked with the slightest deviation from the usual form of the "X" mark and offer too much of an opportunity for a prejudicial count and render the provision for a secret ballot nugatory.

All the evidence upon the hearing by the conciliator related to the eligibility of certain persons to vote. It was wholly immaterial to the issue of purpose or intent in marking the ballot. The fact that the directions for marking the ballot said, "MARK ONLY ONE PLACE—DO NOT SIGN BALLOT," is immaterial where the intent of the voter is clearly indicated, if the secrecy of the election is not impaired by identifying marks such as signatures, initials, or other special markings in unusual places. The direction on the ballot to "MARK ONLY ONE PLACE" must be considered in its normal meaning as a direction to the voter not to vote twice, that is, not to indicate two different choices. Here, the ballot as marked clearly indicated only one choice, which was not an identifying mark. Therefore, where the conciliator followed an improper theory of law in ignoring the intent of the voter, which was clearly ex-pressed on the markings of his ballot, the conciliator's order dis-missing the petition of the AFL union was error. The case should be remanded to the district court for Ramsey county, and the order of that court dismissing the writ of certiorari should be reversed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

I concur in the dissent of Mr. Chief Justice Loring.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.